Barbara Alice PLETCHER, Appellant,

v.

John Joseph GOETZ, Appellee.

Nos. 2–98–179–CV, 2–98–201–CV.

Court of Appeals of Texas,
Fort Worth.

Dec. 16, 1999.

Perry J. Cockerell, Cantey & Hanger, L.L.P., Fort Worth, for appellant.

Robert T. Stites, John T. Eck, Law Offices of Robert T. Stites, A Professional Corp., Fort Worth, for appellee.

Panel A: CAYCE, C.J., DAY and RICHARDS, JJ.

## OPINION ON REHEARING

JOHN CAYCE, Chief Justice.

We grant the motion for rehearing filed by the appellant, withdraw our opinion and judgment issued on September 9, 1999, and substitute the following in their place.

These appeals involve the question of whether certain post-nuptial partition and exchange agreements are unconscionable as a matter of law, whether the trial court abused its discretion in dividing the marital estate, and whether the trial court erred in twice awarding attorney's fees to one of the parties. We will affirm in part, and reverse and render in part.

Barbara Alice Pletcher is an accomplished businesswoman with a doctorate in business administration. She is the founder of a national organization for saleswomen and the author of several books, including a college textbook on business. On March 17, 1985, Pletcher married John Joseph Goetz in California, and the couple lived there until January 1993 when they first separated and Goetz moved to Florida. In March 1994, Goetz returned to California, and the parties attempted to reconcile. One year later, in March 1995,

Goetz's employment brought him to Texas, and Pletcher followed in August of 1995. The couple purchased a home in Fort Worth where they lived until June 7, 1996, when they separated a second time and began divorce proceedings.

During their marriage, the parties executed four partition and exchange agreements that identified separate property and divided community assets and liabilities. During the divorce trial, the validity of three of these agreements was submitted to a jury.[1] The jury found the first agreement, which was executed on January 5, 1993 ("Agreement 1"), was unenforceable; but found that two agreements—one executed in March 1993 ("Agreement 2") and the other in January 1994 ("Agreement 3")—were enforceable and binding upon the parties. Based on the jury's findings, the trial court then entered a decree on March 9, 1998 that dissolved the marriage and divided the marital estate. The court later entered findings of fact and conclusions of law, and Pletcher filed a pro se motion to modify the judgment arguing that the court erred in dividing the marital estate consistent with Agreement 1, which the jury found to be unenforceable. After a hearing, the court denied the motion to modify and assessed $1,775 in attorney's fees against Pletcher.

Less than a month after the March 9 decree was entered, Goetz filed a petition for a post-divorce division of property, claiming that the decree failed to address the parties' interest in a money market account. After a hearing, the court divided the account equally between Pletcher and Goetz, but ordered Pletcher to pay Goetz $600 in attorney's fees.

Pletcher brings two appeals. In one appeal, Pletcher complains of the trial court's original decree dividing the marital estate pursuant to Agreements 2 and 3. In

---

**1.** The enforceability of the fourth agreement executed in September 1996 ("Agreement 4") is not in dispute.

the other appeal, Pletcher challenges the trial court's award to Goetz of $600 in attorney's fees in the proceeding addressing Goetz's post-divorce petition to divide the money market account, and the award to Goetz of $1,775 in attorney's fees for defending the post-decree motion to modify. We consolidated these appeals at Pletcher's request.[2]

██ In her first point, Pletcher argues Agreements 2 and 3 are unconscionable as a matter of law. Under the family code, spouses may agree to "partition or exchange between themselves any part of their community property, then existing or to be acquired."[3] Once a property interest is transferred to a spouse pursuant to a partition and exchange agreement, it becomes that spouse's separate property.[4] The party challenging the enforceability of a partition and exchange agreement bears the burden of proving the agreement was involuntary or unconscionable.[5] However, neither the legislature nor the supreme court has defined the term "unconscionable" in the context of marital property agreements.[6] As a result, appellate courts have turned to the commercial context for guidance in evaluating "unconscionability."[7]

██ The issue of whether a partition and exchange agreement is unconscionable is a question of law for the court.[8] In assessing the conscionability of an agreement, the court should consider all of the circumstances in which the agreement was made.[9] Thus, the court's legal conclusion is dependent upon the facts that illustrate unconscionability.[10] We will not disturb the trial court's conclusion so long as it has evidentiary support.[11] Our role is to determine the correctness of the trial court's finding of conscionability based on the facts.[12]

██ In this case, both Pletcher and Goetz testified to the circumstances surrounding the execution of the partition and exchange agreements. However, each party presented sharply conflicting stories. Goetz stated that Pletcher was predominantly responsible for the family finances and was familiar with the bank and investment accounts affected by the agreements. He further testified that he and Pletcher had discussed the contents of Agreements 2 and 3 and that Pletcher had made suggestions and revisions to both agreements. Moreover, Goetz insisted that he never

2. The original divorce decree and Pletcher's motion to modify judgment were in trial court number 233–238755–96. The trial court's order on the motion to modify judgment and the order on the post-divorce division of property were given a new trial court number 233–266577–98.

3. Tex. Fam.Code Ann. § 4.102 (Vernon 1998).

4. *See id.*

5. *See id.* § 4.105; *see also Beck v. Beck,* 814 S.W.2d 745, 749 (Tex.1991) (public policy dictates that premarital agreements should be enforced), *cert. denied,* 503 U.S. 907, 112 S.Ct. 1266, 117 L.Ed.2d 494 (1992); *Grossman v. Grossman,* 799 S.W.2d 511, 513 (Tex. App.—Corpus Christi 1990, no writ) (premarital agreements are presumptively valid).

6. *See Marsh v. Marsh,* 949 S.W.2d 734, 739 (Tex.App.—Houston [14th Dist.] 1997, no writ).

7. *See, e.g., id.* at 739–40; *Wade v. Austin,* 524 S.W.2d 79, 86 (Tex.Civ.App.—Texarkana 1975, no writ).

8. *See* Tex. Fam.Code Ann. § 4.105(b).

9. *See Fanning v. Fanning,* 828 S.W.2d 135, 143–44 (Tex.App.—Waco 1992), *aff'd in part, rev'd in part on other grounds,* 847 S.W.2d 225 (Tex.1993) (op. on reh'g).

10. *Cf. El Paso Natural Gas Co. v. Minco Oil & Gas Co.,* 964 S.W.2d 54, 60 (Tex.App.—Amarillo 1997, pet. granted) (trial court's ruling on conscionability of commercial contract based on facts demonstrating unconscionability).

11. *See id.*

12. *See id.; see also Forbis v. Trinity Universal Ins. Co.,* 833 S.W.2d 316, 319 (Tex.App.—Fort Worth 1992, writ dism'd) (conclusions of law may not be reviewed for factual sufficiency but to determine correctness based on the facts).

pressured Pletcher to sign the agreements or otherwise threatened to take some adverse action if she failed to execute the agreements.

Pletcher, on the other hand, stated that she did not know about the accounts affected by Agreements 2 and 3 and that Goetz failed to disclose material financial information concerning those bank or investment accounts. She also testified that Goetz demanded that she sign Agreements 2 and 3 immediately, without time to review or reflect on the documents. She further claimed she was coerced into signing the agreements. According to Pletcher, if she did not execute Agreement 2, Goetz threatened to sell the property where her elderly parents lived and, if she did not execute Agreement 3, Goetz would not attempt a reconciliation.

Having reviewed the record, we hold that Goetz's testimony supports the trial court's finding of conscionability. We overrule point one.

In her second point, Pletcher argues that, if the partition and exchange agreements are conscionable and therefore enforceable, the trial court nonetheless abused its discretion in dividing the marital estate. Specifically, she contends that the trial court erroneously awarded Goetz four accounts (three 20th Century investment accounts and one GTE Federal Credit Union account) in which she had a community interest. She further argues that the trial court inequitably divided the estate by awarding Goetz property, including two pieces of real property and four financial accounts, that was not covered under any partition and exchange agreement.

▇▇▇ The family code vests a trial court with broad discretion to divide the parties' property "in a manner that the court deems just and right," considering the rights of the parties and any children of the marriage.[13] The trial court may consider a variety of factors when dividing an estate, such as: (1) relative earning capacities and business experience of the parties; (2) educational background of the parties; (3) size of separate estates; (4) the age, health, and physical condition of the parties; (5) fault in the dissolution of the marriage; (6) the benefits the innocent spouse would have received had the marriage continued; and (7) probable need for future support.[14] The party attacking the property division bears the heavy burden of showing that the trial court's property division was not just and right.[15] We must indulge every reasonable presumption in favor of the trial court's proper exercise of its discretion.[16]

▇▇▇ One who complains of the trial court's division of property must be able to demonstrate from evidence in the record that the division was so unjust and unfair as to constitute an abuse of discretion.[17] A trial court's division will not be disturbed on appeal unless it appears from the record that the division was clearly the result of an abuse of discretion.[18] The test for whether the trial court abused its discretion is whether the court acted arbitrarily or unreasonably.[19]

13. TEX FAM.CODE ANN. § 7.001 (Vernon 1998); *see also Murff v. Murff,* 615 S.W.2d 696, 698 (Tex.1981).

14. *See Finch v. Finch,* 825 S.W.2d 218, 222 (Tex.App.—Houston [1 st Dist.] 1992, no writ); *Zamora v. Zamora,* 611 S.W.2d 660, 662 (Tex. Civ.App.—Corpus Christi 1980, no writ).

15. *See Goetz v. Goetz,* 567 S.W.2d 892, 896 (Tex.Civ.App.—Dallas 1978, no writ).

16. *See Vannerson v. Vannerson,* 857 S.W.2d 659, 669 (Tex.App.—Houston [1 st Dist.] 1993, writ denied).

17. *See Finch,* 825 S.W.2d at 221; *Wallace v. Wallace,* 623 S.W.2d 723, 725 (Tex.Civ.App.—Houston [1 st Dist.] 1981, writ dism'd).

18. *See Mogford v. Mogford,* 616 S.W.2d 936, 944 (Tex.Civ.App.—San Antonio 1981, writ ref'd n.r.e.).

19. *See Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

Reviewing the record, we note that the three 20th Century investment accounts and the GTE Federal Credit Union account in which Pletcher asserts a community interest are specifically characterized as Goetz's separate property in Agreement 2 and confirmed as such in Agreement 3. Because these accounts belong to Goetz as his separate property under Agreements 2 and 3, which the court determined were conscionable and the jury found to be enforceable, we conclude that the trial court's ruling awarding these items to Goetz was neither arbitrary nor unreasonable.[20] Moreover, the record does not support Pletcher's contention that the trial court awarded Goetz property that was not covered by any partition and exchange agreement. To the contrary, Agreement 3 expressly provides that "[a]ny property ... acquired by Husband or Wife during the separation will remain the separate property and responsibility of the procurer." The record reflects that four of the items challenged by Pletcher, the Florida condominium, the GTE Federal Credit Union account, the Dreyfus Money Market Fund,[21] and the Janus Funds account were purchased by Goetz during a period of separation. Because the trial court's property division conforms to the parties' own agreement regarding the characterization of property that was acquired while separated, the trial court did not abuse its discretion in the distribution of these assets.

As for the remaining two items of property that Pletcher addresses—the marital home on Cedar River Trail in Fort Worth and the GTE Employees Savings Plan—we have not found, nor has Pletcher directed us to, anything in the record that suggests the trial court abused its discretion by awarding these assets to Goetz.[22] The essence of Pletcher's complaint is that the overall value of property awarded to Goetz exceeds the value of the property awarded to her. However, the mere fact that a division of the marital estate is not equal does not constitute an abuse of discretion.[23] We overrule point two.

In her third and fourth points, Pletcher challenges the trial court's award of attorney's fees to Goetz. Pletcher contends that there is no statutory authorization for either the trial court's award of $600 in attorney's fees stemming from Goetz's post-decree petition to divide property, or the award of $1,775 in attorney's fees to Goetz for defending the motion to modify judgment.

As a general rule, attorney's fees may not be recovered unless provided for by statute or by contract between the parties.[24] The authorization of attorney's fees in civil cases may not be inferred; rather, it "must be provided for by the

---

**20.** We are not persuaded by Pletcher's contention that Agreement 4, which merely recognizes the parties' dispute over "all financial accounts and real estate holdings," changes the earlier characterization of the property under Agreements 2 and 3.

**21.** According to the record, there are two different Dreyfus accounts, # 762–0090046947 and # 762–0220432140. Agreement 2 and Agreement 3 identify # 762–0090046947 as Goetz's separate property, while the decree awards # 762–0220432140 to Goetz. Pletcher contends that, because the account numbers differ, the trial court erred by awarding Goetz # 762–0220432140. The evidence, however, suggests the contrary. Pletcher originally owned # 762–090046947 and, prior to Agreement 1, the quarterly account summary was addressed to both Pletch-er and Goetz. Sometime after January 1993, Pletcher redeemed all the shares from # 762–0090046947 and transferred her interest in the account to Goetz. The parties then separated in March 1993, and Goetz opened # 762–0220432140 sometime in 1993. The quarterly statements after March 1993 are in Goetz's name alone and bear the account # 762–0220432140.

**22.** *See Goetz,* 567 S.W.2d at 896 (party challenging property division must show that it is not just and right).

**23.** *See Coggin v. Coggin,* 738 S.W.2d 375, 376 (Tex.App.—Corpus Christi 1987, no writ).

**24.** *Travelers Indem. Co. v. Mayfield,* 923 S.W.2d 590, 593 (Tex.1996).

express terms of the statute in question." [25]

■■■■ The family code expressly provides for recovery of attorney's fees in two limited circumstances: (1) proceedings affecting the parent-child relationship and (2) post-divorce petitions to divide property.[26] In addition, courts may consider attorney's fees as one of many factors when making a just and right division of the marital estate.[27]

■■■■ In the instant case, the trial court was authorized under section 9.205 of the family code to award attorney's fees to Goetz arising from the proceeding to divide the money market account previously undivided in the divorce decree.[28] However, contrary to Goetz's contention, section 6.708 of the family code does not authorize the award of attorney's fees in a proceeding involving a motion to modify a prior division of property. Section 6.708 provides:

> (a) In a suit for dissolution of a marriage, the court as it considers reasonable may award costs to a party. Costs may not be adjudged against a party against whom a divorce is granted for confinement in a mental hospital under Section 6.007.

> (b) The expenses of counseling may be taxed as costs against either or both parties.[29]

Costs generally refer to "fees and charges required by law to be paid to the courts or some of their officers, the amount of which is fixed by statute or the court's rules." [30] Although section 6.708 clearly allows expenses of counseling to be taxed as costs, there is no indication that the legislature intended attorney's fees to also be taxed as costs.[31] Certainly, had there been such an intent, the legislature could have easily said so. We therefore overrule point three and sustain point four.

The final divorce decree is affirmed. The order of the trial court arising from the post-divorce division of property is affirmed. The order of the trial court on the motion to modify is affirmed in part. That portion of the order that awards $1,775 in attorney's fees to Goetz is reversed, and judgment is rendered that Goetz is not entitled to those fees. The remainder of the order is affirmed.

**25.** *Id.* (quoting *First City Bank v. Guex*, 677 S.W.2d 25, 30 (Tex.1984)).

**26.** *See* Tex. Fam.Code Ann. § 9.205 (Vernon 1998), § 106.002 (Vernon Supp.2000).

**27.** *See Roever v. Roever*, 824 S.W.2d 674, 676 (Tex.App.—Dallas 1992, no writ); *Powell v. Powell*, 822 S.W.2d 181, 184 (Tex.App.—Houston [1 st Dist.] 1991, writ denied); *Oliver v. Oliver*, 741 S.W.2d 225, 229 (Tex.App.—Fort Worth 1987, no writ); *see also* Tex. Fam.Code Ann. § 7.001 (Vernon 1998) (requiring courts to make a "just and right" division).

**28.** *See* Tex. Fam.Code Ann. § 9.205.

**29.** *Id.* § 6.708.

**30.** *Ex parte Williams*, 866 S.W.2d 751, 753 (Tex.App.—Houston [1 st Dist.] 1993, no writ); *see also Harris County Children's Protective Servs. v. Olvera*, 971 S.W.2d 172, 177 (Tex. App.—Houston [14 th Dist.] 1998, pet. denied) (op. on reh'g); *Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 206 (Tex.App.—Austin 1992, no writ).

**31.** *But see Hirczy v. Hirczy*, 838 S.W.2d 783, 786 (Tex.App.—Corpus Christi 1992, writ denied) (granting trial court discretion to award attorney's fees in a divorce case where awarded party pleaded for them); *State ex rel. Mattox v. Buentello*, 800 S.W.2d 320, 328 (Tex. App.—Corpus Christi 1990, no writ) (allowing trial court to award reasonable attorney's fees in divorce proceeding as long as existence of marriage relationship has been proven).