COURT OF
APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
NO. 2-01-401-CV
DANIEL P. KOLOTA                                                                                
APPELLANT
V.
LORRAINE W. KOLOTA                                                                            
APPELLEE
------------
FROM COUNTY COURT AT LAW NO. 2 OF
WICHITA COUNTY
------------
MEMORANDUM
OPINION(1)
------------
In one issue, Appellant Daniel P. Kolota
complains about the trial court's division of the community estate upon his
divorce from Appellee Lorraine W. Kolota. Because we hold that the trial court
did not err, we affirm the trial court's judgment.
Daniel and Lorraine were married on August
1, 1989 and separated on November 1, 1999. They have two minor children, but
Daniel has not raised any issues concerning the children. After a bench trial,
the trial court entered a final decree of divorce on July 23, 2001. To Daniel,
the trial court awarded the following:

 all household assets in his possession
 or subject to his sole control;
 all clothing, jewelry, and personal
 effects in his possession or subject to his sole control;
 all funds in his sole name or subject
 to his sole control;
 all individual retirement accounts,
 simplified employee pensions, annuities, and variable annuity life insurance
 benefits in his name;
 all mutual fund accounts in his name or
 subject to his sole control;
 all right, title, and interest in
 American Century Ultra Account Number 022-001219197, including the right to
 withdraw funds;
 all right, title, and interest in and
 to the United States Air Force disposable retirement pay as a result of his
 service in the air force that was not awarded to Lorraine;
 all life insurance policies (including
 the cash value) insuring his life;
 all brokerage accounts, stocks, bonds,
 mutual funds, and securities registered in his name, along with all
 dividends, splits, and related rights and privileges; and
 the 1993 Volkswagen Eurovan MV.
  

To Lorraine, the court awarded the
following:

 all household assets in her possession
 or subject to her sole control;
 all clothing, jewelry, and personal
 effects in her possession or subject to her sole control;
 all funds in her sole name or subject
 to her sole control;
 from Daniel's lawyer's IOLTA account,
 $9,733.42;
 all individual retirement accounts,
 simplified employee pensions, annuities, and variable annuity life insurance
 benefits in her name;
 $451.29 per month of the air force
 disposable retirement pay, plus cost-of-living increases;
 all life insurance policies (including
 cash values) insuring her life;
 all brokerage accounts, stocks, bonds,
 and mutual funds registered in her name, including dividends, splits, and
 other connected privileges;
 the 1997 Volkswagen Jetta GLS; and
 $40,000 from Daniel, less 50% of any
 resulting tax liability or early withdrawal penalty, if any.
  

Daniel was ordered to pay the balance of
the USAA Federal Savings Bank Mastercard/Visa, which he testified was minimal,
all obligations incurred by him after the separation, and all encumbrances and
taxes for the property he was awarded. Lorraine was ordered to pay $4,175.68 to
Ace Cash Express, all obligations incurred by her after the separation, and all
encumbrances and taxes for the property she was awarded.
The payment to Ace Cash Express and
attorney's fees of $17,500 to Lorraine's attorney were both ordered to be paid
from the net proceeds from the sale of the community residence that were in
Daniel's attorney's IOLTA fund. Because Lorraine was specifically awarded the
remaining balance of the net proceeds and because the debts ordered paid
directly from the net proceeds were awarded to her, it is clear to us that the
trial court implicitly awarded her the entire amount of the net proceeds in the
account, $31,409.10.
In one issue, Daniel complains that the
trial court abused its discretion when it "determinated a 'fair and
equitable' division of the community property." No findings of fact or
conclusions of law were requested or filed. In a trial to the court where no
findings of fact or conclusions of law are filed, the trial court's judgment
implies all findings of fact necessary to support it.(2)
Where the implied findings of fact are supported by the evidence, it is our duty
to uphold the judgment on any theory of law applicable to the case.(3)
We must uphold the judgment regardless of whether the trial court articulates
the correct legal reason for the judgment.(4)
A trial court is charged with dividing the
community estate in a "just and right" manner, considering the rights
of both parties.(5) Factors that a court may
consider in dividing the community estate include:

 (1) relative earning capacities and
 business experience of the parties;
 (2) educational background of the
 parties;
 (3) size of separate estates;
 (4) the age, health, and physical
 condition of the parties;
 (5) fault in the dissolution of the
 marriage;
 (6) the benefits the innocent spouse
 would have received had the marriage continued; and
 (7) probable need for future support.(6)

The party complaining of the trial court's
division of property must demonstrate from evidence in the record that the
division was so unjust that the trial court abused its discretion.(7)
On the other hand, if there is any reasonable basis for doing so, we must
presume that the trial court exercised its discretion properly.(8)
We will not disturb the trial court's division unless the record demonstrates
"that the division was clearly the result of an abuse of discretion."(9)
That is, we will not reverse the case unless the record clearly shows that the
trial court was acting arbitrarily or unreasonably.(10)
The divorce was granted "on the
grounds of cruelty perpetrated by" Lorraine against Daniel. The record
shows that Lorraine had been out of the workforce for most of the marriage and
was unemployable at the time of divorce because of drug addiction. It also shows
that she had an associate's degree; in contrast, Daniel lacked two courses
completing his master's degree in aeronautical science and his annual income
excluding investments was over $100,000.
Daniel's combined balance sheet provided
that the community's assets as of March 12, 2001, the date trial began, totaled
approximately $216,400, exclusive of the air force retirement. Lorraine's
combined balance sheet, as updated by testimony, placed the value of the
community's assets at around $232,000, also exclusive of the air force
retirement. While the present value of the air force retirement does not appear
in the record, the trial court split the community's portion of that retirement
equally, so that item does not affect the overall division.
From a review of Daniel's own balance
sheet, he received about $111,500 (52%) of the community's assets, while
Lorraine received about $101,440 (48%) of the community's assets. Again, her
share included the approximate $21,700 that the trial court ordered paid
directly out of the IOLTA fund to her attorney and Ace Cash Express. Daniel was
charged with paying debts that he admitted were negligible, while Lorraine's
debts, according to her balance sheet, exceeded $38,000. Under Lorraine's
balance sheet, Daniel received about $184,300 (79%), and Lorraine received about
$47,700 (21%).
We cannot say that the division was so
unjust that the trial court abused its discretion. We therefore overrule
Daniel's sole issue and affirm the trial court's judgment.
 
                                                                               
PER CURIAM
PANEL F: DAUPHINOT, GARDNER, and WALKER,
JJ.
[DELIVERED FEBRUARY 13, 2003]

1. See Tex. R. App. P. 47.4.
2. Pharo v. Chambers County, 922 S.W.2d 945, 948
(Tex. 1996).
3. Worford v. Stamper, 801 S.W.2d 108, 109 (Tex.
1990); Point Lookout West, Inc. v. Whorton, 742 S.W.2d 277, 278 (Tex.
1987).
4. See Harrington v. R.R. Comm'n, 375 S.W.2d 892,
895 (Tex. 1964); Dale v. Fin. Am. Corp., 929 S.W.2d 495, 497-98 (Tex.
App.--Fort Worth 1996, writ denied).
5. Tex. Fam. Code Ann. § 7.001 (Vernon 1998).
6. Pletcher v. Goetz, 9 S.W.3d 442, 446 (Tex.
App.--Fort Worth 1999, pet. denied) (op. on reh'g).
7. Id.
8. Id.
9. Id.
10. See Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241-42 (Tex. 1985), cert. denied, 476 U.S. 1159 (1986).