COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-230-CV
 
  
MARY 
ESTELLE WILLIAMS                                                     APPELLANT
  
V.
  
CLIFFORD 
LOREN WILLIAMS                                                     APPELLEE
 
  
------------
 
FROM 
THE 324TH DISTRICT COURT OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
        In 
seven issues, Appellant Mary E. Williams appeals from a divorce and from the 
related division of the community estate. The couple has no children, and the 
main issues on appeal concern real property and reimbursement. Because we hold 
that the trial court abused its discretion in awarding Appellee Clifford L. 
Williams reimbursement for $80,000 in separate property monies he allegedly 
expended on the community estate, we reverse and remand the case to the trial 
court for a new trial on the division of the community estate but affirm the 
divorce as modified.
Background 
Facts
        After 
their marriage in 1986, the parties bought approximately 6.58 acres in 1987 and 
another adjoining acre in 1993. They built a two-story shop building on the 
acre, and they repaired the fence and added a tank, a well, utilities, storage 
sheds, and landscaping to the entire property before building a house. There is 
no evidence about the value of the approximately 7.58 acres including 
improvements before the parties began building the house. While the house was 
being completed, the couple lived in their shop. They made periodic payments to 
the contractor while the new house was being completed. At the time they closed 
on the house, they financed the remaining amount due on the house as well as the 
purchase price of five additional adjoining unimproved acres, giving them total 
acreage of about 12.58 acres (“the Jaybird Lane property”). Later, when the 
couple was contemplating divorce, Clifford refinanced the note. The trial court 
found:
  
•      During 
the marriage, the couple acquired a house and land at 1291 Jaybird Road, 
Springtown, Texas, worth $220,000 with a net equity of $161,700.
 
•      The 
value of Clifford’s Prudential Account before the marriage is unknown.
 
•      On 
the date of divorce, the mortgage balance for the real property located at 1291 
Jaybird Lane, Springtown, Texas was $58,300.
 
•      The 
real property located at 1291 Jaybird Lane, Springtown, Texas was purchased for 
approximately $172,000 on March 15, 2001.
 
•      Mary 
paid a down payment of $13,000 from her Prudential Funds for the real property 
located at 1291 Jaybird Lane, Springtown, Texas.
 
•      “CLIFFORD 
LOREN WILLIAMS MARY ESTELLE WILLIAMS” [sic] paid a down payment of 
approximately $80,000 and a down payment of $13,000 from his separate funds for 
the real property at 1291 Jaybird Lane, Springtown, Texas.
 
•      The 
original mortgage balance for the real property located at 1291 Jaybird Lane, 
Springtown, Texas was $66,000 on March 15, 2001.
 
•      Mary’s 
separate estate has a claim of economic contribution with respect to the 
Springtown property for $13,000 representing her contribution and $27,850 
representing her community interest in the property.
 
•      The 
division of the community estate results in a 50/50 division of the community 
estate, with each party receiving $99,549 worth of the community estate.
    
Market Value of 
the Jaybird Lane Property
        In 
her third issue, Mary contends that the evidence is legally insufficient to 
support the trial court’s finding that the market value of the Jaybird Lane 
property was $220,000. The trial court's findings of fact are reviewable for 
legal sufficiency of the evidence to support them by the same standards that are 
applied in reviewing evidence supporting a jury's answer.[2]  
But a court of appeals cannot make findings of fact; it can only “unfind” 
facts.[3]  An appellant attacking the legal 
sufficiency of an adverse answer to an issue on which she had the burden of 
proof must overcome two hurdles.[4]  First, the 
record must be examined for evidence that supports the finding, while ignoring 
all evidence to the contrary. Second, if there is no evidence to support the 
finding, then the entire record must be examined to see if the contrary 
proposition is established as a matter of law.[5]  
The issue should be sustained only if the contrary proposition is conclusively 
established.[6]
        The 
documentary evidence shows that the combined acre and 6.58 acres were appraised 
for tax purposes at $220,000, and the additional five acres, bought for $20,000 
at the same time that the couple closed on the house, was appraised for tax 
purposes at $30,000. Mary testified that the market value of the Jaybird Lane 
property is $250,000. But she also testified that her private appraisal was 
lower. The fair market value of the Jaybird Lane property listed on Clifford’s 
inventory, which was admitted into evidence, is $200,000, and Clifford testified 
that the property is worth $200,000. Clifford also testified that he determined 
the fair market value listed on his inventory from the tax appraisal values, 
that he thought those values were “fairly accurate,” and that he agreed with 
the appraisals. The market value determined by the trial court falls between the 
parties’ numbers. We cannot say that Mary established the market value of the 
Jaybird Lane property at $250,000 as a matter of law.[7]  
We overrule Mary’s third issue in part. Because of our disposition of this 
appeal, we do not reach the remainder of the third issue, which challenges the 
factual sufficiency of the evidence to support the finding.[8]
Reimbursement 
to Clifford
        In 
her first issue, Mary contends that the trial court’s finding that Clifford 
paid a down payment of approximately $80,000 and $13,000 from his separate funds 
for the Jaybird Lane property is not proved by clear and convincing evidence. In 
her second issue, Mary contends that Clifford did not prove his claim of 
reimbursement by clear and convincing evidence. We agree.
        The 
judge’s letter to the parties demonstrates that he awarded Clifford 100% 
reimbursement for the $93,000. To the extent that the trial court erred in 
awarding Clifford reimbursement for the $13,000 he allegedly took out of his 
Prudential Financial 401(k) fund to pay for part of the construction costs, an 
equal, offsetting error occurred when the trial court awarded Mary reimbursement 
for $13,000 she allegedly took out of her Lockheed Martin savings plan or her 
401(k) fund to pay for construction costs because our review of the record shows 
that neither party demonstrated by clear and convincing evidence that the funds 
were not community property.[9]  We will 
therefore focus on the $80,000 figure.
        The 
parties already owned the land before they built the house, and Clifford’s own 
testimony shows that payments for the completion of the house were made 
periodically; there was no down payment. Specifically, Clifford testified that 
he deposited proceeds of $90,500 from the sale of his separate property into his 
Prudential account, which was connected to his IRA. He testified that the only 
monies that went in to the Prudential checking account were those proceeds. He 
also testified that the only checks written as periodic payments for the house, 
except for the withdrawals allegedly made equally from each spouse’s 401(k) 
fund, were written on his Prudential checking account. Finally, he testified 
that the Prudential checking account no longer exists and that he must have 
misplaced the checks. He did not produce the checks in discovery. A copy of the 
check he received for the sale of his separate property is in evidence; however, 
no documentary evidence, such as checks, deposit slips, withdrawal slips, or 
bank statements, was admitted to show that the check was deposited into a 
segregated account or that checks were written from a segregated account to the 
contractor.  Similarly, no documentary evidence shows that the couple was 
billed by a contractor.
        Mary 
conceded that Clifford paid some of the separate property proceeds into the new 
house but disagreed that he paid $80,000.  She also testified that the 
$90,500 check was not deposited into any account that she had possession of or 
wrote checks on.  Additionally, she testified that they lived in the shop 
while they built the house and continued to work and draw their salaries during 
that time.  Finally, she testified that Clifford wrote some of the checks 
to pay for the house and that she wrote some of the checks to pay for the house, 
and that a large portion of the house was paid for out of community funds in her 
possession.
        Documentary 
evidence that Clifford received money from the sale of his separate property 
does not tend to prove that he expended that separate property for the 
community’s benefit.  Consequently, we hold that Clifford failed to prove 
how much of his separate property, if any, went toward the building of the new 
house.  We sustain Mary’s first issue.
        Further, 
even if Clifford had proved that he spent $80,000 of his separate property on 
the house, he still failed to prove the amount of his reimbursement claim.  
When funds from one marital estate are used to make payments on or capital 
improvements to the property of another marital estate, the proper measure of 
reimbursement is the enhancement in value of the receiving estate.[10]  A house added to land already owned by an estate 
is a capital improvement.[11]  The enhancement 
in value is the difference between the fair market value of the receiving estate 
before the improvements or payments from the giving estate are made and 
the fair market value of the receiving estate after the payments or 
improvements are made; it is not the actual cost of the payments or 
improvements.[12]   The party claiming 
reimbursement bears the burden of establishing the net benefit to the payee 
estate.[13]   No evidence was admitted that 
indicated the fair market value of the property before the house was built, but 
evidence was admitted that the couple had added improvements to the property 
before building the house. Clifford specifically testified that he did not know 
what the value of the admittedly improved property was at the time the house was 
built. Consequently, Clifford failed to meet his burden of showing the fair 
market value of the property before the house was added. Without that figure, 
the proper amount of the reimbursement claim cannot be determined. We sustain 
Mary’s second issue.
Abuse of 
Discretion in Dividing Community Estate
        In 
her fifth issue, Mary contends that the property division was manifestly unfair 
and an abuse of discretion. We agree. A trial court is charged with dividing the 
community estate in a “just and right” manner, considering the rights of 
both parties.[14]  If there is any reasonable 
basis for doing so, we must presume that the trial court exercised its 
discretion properly.[15]   We will not 
disturb the trial court’s division unless the record demonstrates “that the 
division was clearly the result of an abuse of discretion.”[16]   
That is, we will not reverse the case unless the record clearly shows that the 
trial court was acting arbitrarily or unreasonably.[17]   
The complaining party has the burden of proving from the record that the 
division was so unjust that the trial court abused its discretion.[18]   
The values of individual items “are evidentiary to the ultimate issue of 
whether the trial court divided the properties in a just and right manner.”[19]
        By 
awarding Clifford reimbursement of $80,000, the trial court drastically reduced 
the size of the community, which according to the trial court’s calculations 
was worth about $199,100, excluding the reimbursement amounts. Because Clifford 
was awarded the entire $80,000 as his separate property, Mary was awarded much 
less than the fifty percent share of the community that the trial court’s 
letter to the parties and the findings of fact and conclusions of law indicate 
that the trial court intended to award her. We sustain Mary’s fifth issue.[20]
Name Change
        In 
her seventh issue, Mary contends that the trial court abused its discretion by 
failing to change her name to Mary Estelle Lindsey under Texas Family Code 
section 6.706(a).[21]  Mary requested the name 
change in her petition.  Clifford agrees that her name should be 
changed.  We sustain Mary’s seventh issue.
Conclusion
        Accordingly, 
we (1) modify the divorce decree to order that Mary’s name be changed to Mary 
Estelle Lindsey and (2) affirm as modified the portion of the divorce decree 
granting the divorce but (3) reverse and remand the case for a new trial on the 
division of the community estate.
  
  
                                                          LEE 
ANN DAUPHINOT
                                                          JUSTICE
    
  
PANEL 
A:   LIVINGSTON, DAUPHINOT, and WALKER, JJ.
 
DELIVERED: 
May 26, 2005


NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex. 1996); Catalina v. Blasdel, 
881 S.W.2d 295, 297 (Tex. 1994).
3.  
Tex. Nat'l Bank v. Karnes, 717 S.W.2d 901, 903 (Tex. 1986).
4.  
Victoria Bank & Trust Co. v. Brady, 811 S.W.2d 931, 940 (Tex. 1991).
5.  
Dow Chem. Co. v. Francis, 46 S.W.3d 237, 242 (Tex. 2001); Sterner v. 
Marathon Oil Co., 767 S.W.2d 686, 690 (Tex. 1989).
6.  
Dow Chem., 46 S.W.3d at 241-42.
7.  
See In re Marriage of Scott, 117 S.W.3d 580, 585 (Tex. App.—Amarillo 
2003, no pet.) (stating that “authority has long recognized that values 
reflected by the tax rolls do not reflect actual value”) (quotations omitted).
8.  
See Tex. R. App. P. 47.1.
9.  
See Tex. Fam. Code Ann. § 
3.003 (Vernon 1998).
10.  
Penick v. Penick, 783 S.W.2d 194, 197 (Tex. 1988); Anderson v. 
Gilliland, 684 S.W.2d 673, 675 (Tex. 1985).
11.  
See, e.g, In re the Marriage of Morris, 12 S.W.3d 877, 881-82 
(Tex. App.—Texarkana 2000, no pet.); Leighton v. Leighton, 921 S.W.2d 
365, 367 (Tex. App.—Houston [1st Dist.] 1996, no pet.).
12.  
See Anderson, 684 S.W.2d at 675.
13.  
Vallone v. Vallone, 644 S.W.2d 455, 459 (Tex. 1982); Zeptner v. 
Zeptner, 111 S.W.3d 727, 737 (Tex. App.—Fort Worth 2003, no pet.) (op. on 
reh’g).
14.  
Tex. Fam. Code Ann. § 7.001 
(Vernon 1998).
15.  
Pletcher v. Goetz, 9 S.W.3d 442, 446 (Tex. App.—Fort Worth 1999, pet. 
denied) (op. on reh'g).
16.  
Id.
17.  
See Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 
(Tex. 1985), cert. denied, 476 U.S. 1159 (1986).
18.  
Pletcher, 9 S.W.3d at 446.
19.  
Finch v. Finch, 825 S.W.2d 218, 221 (Tex. App.—Houston [1st Dist.] 
1992, no writ); see Wallace v. Wallace, 623 S.W.2d 723, 725 (Tex. Civ. 
App.—Houston [1st Dist.] 1981, writ dism’d).
20.  
Because of our disposition of this case, we do not reach Mary’s fourth and 
sixth issues. See Tex. R. App. P. 
47.1.
21.  
See Tex. Fam. Code Ann. § 
6.706(a).