Mary Estelle Williams v. Clifford Loren Williams

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-230-CV

MARY ESTELLE WILLIAMS APPELLANT

V.

CLIFFORD LOREN WILLIAMS APPELLEE

------------

FROM THE 324
TH
 DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

In seven issues, Appellant Mary E. Williams appeals from a divorce and from the related division of the community estate.  The couple has no children, and the main issues on appeal concern real property and reimbursement.  Because we hold that the trial court abused its discretion in awarding Appellee Clifford L. Williams reimbursement for $80,000 in separate property monies he allegedly expended on the community estate, we reverse and remand the case to the trial court for a new trial on the division of the community estate but affirm the divorce as modified.

Background Facts

After their marriage in 1986, the parties bought approximately 6.58 acres in 1987 and another adjoining acre in 1993.  They built a two-story shop building on the acre, and they repaired the fence and added a tank, a well, utilities, storage sheds, and landscaping to the entire property before building a house.  There is no evidence about the value of the approximately 7.58 acres including improvements before the parties began building the house.  While the house was being completed, the couple lived in their shop.  They made periodic payments to the contractor while the new house was being completed.  At the time they closed on the house, they financed the remaining amount due on the house as well as the purchase price of five additional adjoining unimproved acres, giving them total acreage of about 12.58 acres (“the Jaybird Lane property”).  Later, when the couple was contemplating divorce, Clifford refinanced the note.  The trial court found:

During the marriage, the couple acquired a house and land at 1291 Jaybird Road, Springtown, Texas, worth $220,000 with a net equity of $161,700.

The value of Clifford’s Prudential Account before the marriage is unknown.

On the date of divorce, the mortgage balance for the real property located at 1291 Jaybird Lane, Springtown, Texas was $58,300.

The real property located at 1291 Jaybird Lane, Springtown, Texas was purchased for approximately $172,000 on March 15, 2001.

Mary paid a down payment of $13,000 from her Prudential Funds for the real property located at 1291 Jaybird Lane, Springtown, Texas.

“CLIFFORD LOREN WILLIAMS MARY ESTELLE WILLIAMS” [sic] paid a down payment of approximately $80,000 and a down payment of $13,000 from his separate funds for the real property at 1291 Jaybird Lane, Springtown, Texas.

The original mortgage balance for the real property located at 1291 Jaybird Lane, Springtown, Texas was $66,000 on March 15, 2001.

Mary’s separate estate has a claim of economic contribution with respect to the Springtown property for $13,000 representing her contribution and $27,850 representing her community interest in the property.

The division of the community estate results in a 50/50 division of the community estate, with each party receiving $99,549 worth of the community estate.

Market Value of the Jaybird Lane Property

In her third issue, Mary contends that the evidence is legally insufficient to support the trial court’s finding that the market value of the Jaybird Lane property was $220,000.  The trial court's findings of fact are reviewable for legal sufficiency of the evidence to support them by the same standards that are applied in reviewing evidence supporting a jury's answer.
(footnote: 2)  But a court of appeals cannot make findings of fact; it can only “unfind” facts.
(footnote: 3)  An appellant  attacking the legal sufficiency of an adverse answer to an issue on which she had the burden of proof must overcome two hurdles.
(footnote: 4)  First, the record must be examined for evidence that supports the finding, while ignoring all evidence to the contrary.  Second, if there is no evidence to support the finding, then the entire record must be examined to see if the contrary proposition is established as a matter of law.
(footnote: 5)  The issue should be sustained only if the contrary proposition is conclusively established.
(footnote: 6)
 The documentary evidence shows that the combined acre and 6.58 acres were appraised for tax purposes at $220,000, and the additional five acres, bought for $20,000 at the same time that the couple closed on the house, was appraised for tax purposes at $30,000.  Mary testified that the market value of the Jaybird Lane property is $250,000.  But she also testified that her private appraisal was lower.  The fair market value of the Jaybird Lane property listed on Clifford’s inventory, which was admitted into evidence, is $200,000,  and Clifford testified that the property is worth $200,000.  Clifford also testified that he determined the fair market value listed on his inventory from the tax appraisal values, that he thought those values were “fairly accurate,” and that he agreed with the appraisals.  The market value determined by the trial court falls between the parties’ numbers.  We cannot say that Mary established the market value of the Jaybird Lane property at $250,000 as a matter of law.
(footnote: 7)  We overrule Mary’s third issue in part.  Because of our disposition of this appeal, we do not reach the remainder of the third issue, which challenges the factual sufficiency of the evidence to support the finding.
(footnote: 8)
Reimbursement to Clifford

In her first issue, Mary contends that the trial court’s finding that  Clifford paid a down payment of approximately $80,000 and $13,000 from his separate funds for the Jaybird Lane property is not proved by clear and convincing evidence.  In her second issue, Mary contends that Clifford did not prove his claim of reimbursement by clear and convincing evidence.  We agree.

The judge’s letter to the parties demonstrates that he awarded Clifford 100% reimbursement for the $93,000.  To the extent that the trial court erred in awarding Clifford reimbursement for the $13,000 he allegedly took out of his Prudential Financial 401(k) fund to pay for part of the construction costs, an equal, offsetting error occurred when the trial court awarded Mary reimbursement for $13,000 she allegedly took out of her Lockheed Martin savings plan or her 401(k) fund to pay for construction costs because our review of the record shows that neither party demonstrated by clear and convincing evidence that the funds were not community property.
(footnote: 9)  We will therefore focus on the $80,000 figure.

The parties already owned the land before they built the house, and  Clifford’s own testimony shows that payments for the completion of the house were made periodically; there was no down payment.  Specifically, Clifford testified that he deposited proceeds of $90,500 from the sale of his separate property into his Prudential account, which was connected to his IRA.  He testified that the only monies that went in to the Prudential checking account were those proceeds.  He also testified that the only checks written as periodic payments for the house, except for the withdrawals allegedly made equally from each spouse’s 401(k) fund, were written on his Prudential checking account.  Finally, he testified that the Prudential checking account no longer exists and that he must have misplaced the checks.  He did not produce the checks in discovery.  A copy of the check he received for the sale of his separate property is in evidence; however, no documentary evidence, such as checks, deposit slips, withdrawal slips, or bank statements, was admitted to show that the check was deposited into a segregated account or that checks were written from a segregated account to the contractor.  Similarly, no documentary evidence shows that the couple was billed by a contractor. Mary conceded that Clifford paid some of the separate property proceeds into the new house but disagreed that he paid $80,000.  She also testified that the $90,500 check was not deposited into any account that she had possession of or wrote checks on.  Additionally, she testified that they lived in the shop while they built the house and continued to work and draw their salaries during that time.  Finally, she testified that Clifford wrote some of the checks to pay for the house and that she wrote some of the checks to pay for the house, and that a large portion of the house was paid for out of community funds in her possession.

Documentary evidence that Clifford received money from the sale of his separate property does not tend to prove that he expended that separate property for the community’s benefit.  Consequently, we hold that Clifford failed to prove how much of his separate property, if any, went toward the building of the new house.  We sustain Mary’s first issue.

Further, even if Clifford had proved that he spent $80,000 of his separate property on the house, he still failed to prove the amount of his reimbursement claim.  When funds from one marital estate are used to make payments on or capital improvements to the property of another marital estate, the proper measure of reimbursement is the enhancement in value of the receiving estate.
(footnote: 10)  A house added to land already owned by an estate is a capital improvement.
(footnote: 11)  The enhancement in value is the difference between the fair market value of the receiving estate 
before
 the improvements or payments from the giving estate are made and the fair market value of the receiving estate 
after 
the payments or improvements are made; it is not the actual cost of the payments or improvements.
(footnote: 12)  The party claiming reimbursement bears the burden of establishing the net benefit to the payee estate.
(footnote: 13)  No evidence was admitted that indicated the fair market value of the property before the house was built, but evidence was admitted that the couple had added improvements to the property before building the house.  Clifford specifically testified that he did not know what the value of the admittedly improved property was at the time the house was built.  Consequently, Clifford failed to meet his burden of showing the fair market value of the property before the house was added.  Without that figure, the proper amount of the reimbursement claim cannot be determined.  We sustain Mary’s second issue.

Abuse of Discretion in Dividing Community Estate

In her fifth issue, Mary contends that the property division was manifestly unfair and an abuse of discretion.  We agree.  A trial court is charged with dividing the community estate in a “just and right” manner, considering the rights of both parties.
(footnote: 14)  If there is any reasonable basis for doing so, we must presume that the trial court exercised its discretion properly.
(footnote: 15)  We will not disturb the trial court’s division unless the record demonstrates “that the division was clearly the result of an abuse of discretion.”
(footnote: 16)  That is, we will not reverse the case unless the record clearly shows that the trial court was acting arbitrarily or unreasonably.
(footnote: 17)  The complaining party has the burden of proving from the record that the division was so unjust that the trial court abused its discretion.
(footnote: 18)  The values of individual items “are evidentiary to the ultimate issue of whether the trial court divided the properties in a just and right manner.”
(footnote: 19)
 By awarding Clifford reimbursement of $80,000, the trial court drastically reduced the size of the community, which according to the trial court’s calculations was worth about $199,100, excluding the reimbursement amounts.  Because Clifford was awarded the entire $80,000 as his separate property, Mary was awarded much less than the fifty percent share of the community that the trial court’s letter to the parties and the findings of fact and conclusions of law indicate that the trial court intended to award her.  We sustain Mary’s fifth issue.
(footnote: 20)
Name Change

In her seventh issue, Mary contends that the trial court abused its discretion by failing to change her name to Mary Estelle Lindsey under Texas Family Code section 6.706(a).
(footnote: 21)  Mary requested the name change in her petition.  Clifford agrees that her name should be changed.  We sustain Mary’s seventh issue.

Conclusion

Accordingly, we (1) modify the divorce decree to order that Mary’s name  be changed to Mary Estelle Lindsey and (2) affirm as modified the portion of the divorce decree granting the divorce but (3) reverse and remand the case for a new trial on the division of the community estate.

LEE ANN DAUPHINOT

JUSTICE

PANEL A: LIVINGSTON, DAUPHINOT, and WALKER, JJ.

DELIVERED:  May 26, 2005

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
Ortiz v. Jones
, 917 S.W.2d 770, 772 (Tex. 1996); 
Catalina v. Blasdel
, 881 S.W.2d 295, 297 (Tex. 1994).

3:
Tex. Nat'l Bank v. Karnes
, 717 S.W.2d 901, 903 (Tex. 1986).

4:
Victoria Bank & Trust Co. v. Brady
, 811 S.W.2d 931, 940 (Tex. 1991).

5:
Dow Chem. Co. v. Francis
, 46 S.W.3d 237, 242 (Tex. 2001); 
Sterner v. Marathon Oil Co.
, 767 S.W.2d 686, 690 (Tex. 1989).

6:
Dow Chem
., 46 S.W.3d at 241-42.

7:
See In re Marriage of Scott
, 117 S.W.3d 580, 585 (Tex. App.—Amarillo 2003, no pet.) (stating that “authority has long recognized that values reflected by the tax rolls do not reflect actual value”) (quotations omitted).

8:
See 
Tex. R. App. P.
 47.1.

9:
See 
Tex. Fam. Code Ann.
 § 3.003 (Vernon 1998).

10:
Penick v. Penick
, 783 S.W.2d 194, 197 (Tex. 1988);
 Anderson v. Gilliland
, 684 S.W.2d 673, 675 (Tex. 1985).

11:
See, e.g
, 
In re the Marriage of Morris
, 12 S.W.3d 877, 881-82 (Tex. App.—Texarkana 2000, no pet.); 
Leighton v. Leighton
, 921 S.W.2d 365, 367 (Tex. App.—Houston [1
st
 Dist.] 1996, no pet.).

12:
See Anderson
, 684 S.W.2d at 675.

13:
Vallone v. Vallone
, 644 S.W.2d 455, 459 (Tex. 1982); 
Zeptner v. Zeptner
, 111 S.W.3d 727, 737 (Tex. App.—Fort Worth 2003, no pet.) (op. on reh’g).

14:
Tex. Fam. Code Ann. 
§ 7.001 (Vernon 1998).

15:
Pletcher v. Goetz
, 9 S.W.3d 442, 446 (Tex. App.—Fort Worth 1999, pet. denied) (op. on reh'g).

16:
Id.

17:
See Downer v. Aquamarine Operators
,
 Inc.
, 701 S.W.2d 238, 241-42 (Tex. 1985), 
cert. denied
, 476 U.S. 1159 (1986).

18:
Pletcher
, 9 S.W.3d at 446.

19:
Finch v. Finch
,
 
825 S.W.2d 218, 221 (Tex. App.—Houston [1st
 Dist.] 1992, no writ); 
see Wallace v. Wallace
, 623 S.W.2d 723, 725 (Tex. Civ. App.—Houston [1st Dist.] 1981, writ dism’d).

20:
Because of our disposition of this case, we do not reach Mary’s fourth and sixth issues.  
See
 
Tex. R. App. P.
 47.1.

21:
See
 
Tex. Fam. Code Ann.
 § 6.706(a).