# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-09-00057-CV

---

**Maxie George Linton, Appellant**

**v.**

**Ruby Mae Linton, Appellee**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
NO. D-1-FM-86-390703, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING**

---

### M E M O R A N D U M   O P I N I O N

In this divorce proceeding, judgment was orally pronounced in 1987 but not memorialized in writing until 2007. Once memorialized, a new trial was held, and the district court divided the marital estate as it existed on June 30, 1986, the date of divorce. Maxie George Linton appeals both the district court's judgment granting Ruby Mae Linton's bill of review and the district court's property division, as set out in the 2008 final decree of divorce. We will affirm.

### BACKGROUND

Maxie George Linton took a default divorce against Ruby Mae Linton on June 30, 1986. On July 31, 1987, Ruby filed her Original Petition for Bill of Review, seeking to have the district court set aside the divorce decree. Following a hearing on September 9, 1987, the district court granted Ruby's petition, set aside the decree, and ordered a new trial as to the property division. The court's docket sheet indicates that the court rendered judgment vacating the

division of the marital estate—but not the dissolution of the marriage—and that a record was made. However, no written judgment was signed at that time. The court reporter's notes and records from the 1987 bill-of-review hearing have since been lost or destroyed.

Almost twenty years later, on March 7, 2007, the district court signed an interlocutory order on Ruby's bill of review, setting aside the 1986 divorce decree. The new trial, as ordered by the district court in 1987, began March 3, 2008. Pending trial, the district court signed temporary orders, under which Maxie was required to make monthly payments of $1,050 into the court's registry. A final order and decree of divorce was signed on December 12, 2008. The district court determined that the martial property should be divided as it had been originally divided in the 1986 divorce decree except that the statutory formula should be used to award Ruby half the community interest in Maxie's military retirement pay. The court also awarded Ruby all of the funds in the court registry. Maxie appeals the district court's property division and the district court's judgment granting Ruby's bill of review.

**ANALYSIS**

In his first issue, Maxie argues that the district court erred in refusing to grant him a new trial on the grounds that a significant portion of the court reporter's notes and records had been lost or destroyed. In his reply brief, however, Maxie "concedes the merits of this argument" and advises us that he is no longer pursuing this point on appeal.

In his second issue, Maxie argues that the district court erred in granting Ruby's petition for bill of review because Ruby had "accepted the benefits" of the judgment she sought to overturn. There appears to be no dispute that the marital estate was not finally divided until 2008,

2

but Maxie's argument focuses on the state of the marital estate as of 2008 rather than as of 1987. Although presented as such, neither party addresses whether our analysis as to their acceptance-of-the-benefits dispute is to be as of pronouncement of the judgment on September 9, 1987 or as of entry of the judgment on March 7, 2007.

Generally, a judgment is rendered when the decision is officially announced orally in open court, by memorandum filed with the clerk, or otherwise announced publicly. *Garza v. Texas Alcoholic Beverage Comm'n*, 89 S.W.3d 1, 6 (Tex. 2002). Where there is a dispute as to the date judgment was rendered, however, the date the judgment was signed prevails over the conflicting docket sheet entry. *Id.* at 7. Here, though, there appears to be no dispute that judgment was, indeed, orally rendered in 1987, and the docket sheet supports this conclusion.

Despite the district court's order vacating the 1986 divorce decree in 1987, neither party made any effort to pursue a new trial at that time. In the absence of a decree dividing the property, the community property existing as of June 30, 1986 remained undivided. Until the final decree of divorce was entered in 2008, the parties' property as of June 30, 1986 remained community property. From the time the 1986 property division was vacated until the time the district court signed the 2008 property division, there was simply no judgment under which Ruby could have accepted benefits. Thus, we review Maxie's acceptance-of-the-benefits argument as of September 9, 1987, when judgment was orally pronounced by the district court.

It has long been established that, based on a theory of estoppel, a person "cannot treat a judgment as both right and wrong, and if he has voluntarily accepted the benefits of a judgment, he cannot afterwards prosecute an appeal therefrom." *Hawkins v. Hawkins*, 999 S.W.2d

3

171, 178 (Tex. App.—Austin 1999, no pet.) (quoting *Carle v. Carle*, 234 S.W.2d 1002, 1004 (Tex. 1950)).  By arguing that Ruby had accepted the benefits of the judgment she sought to overturn, Maxie is challenging the sufficiency of the evidence to support the district court's conclusion that Ruby had not accepted the benefits of the judgment.

At trial, Maxie had the burden of proving that Ruby had accepted the benefits of the judgment and, thus, was estopped from challenging its validity. *See Waite v. Waite*, 150 S.W.3d 797, 803 (Tex. App.—Houston [14th Dist.] 2004, pet. denied); *Gonzalez v. Gonzalez*, 614 S.W.2d 203, 204 (Tex. App.—Eastland 1981, writ dism'd w.o.j.).  When a party challenges the legal sufficiency of the evidence supporting an adverse finding on an issue on which it has the burden of proof, that party can prevail only if it demonstrates that the evidence conclusively establishes all vital facts in support of the issue.  *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). When conducting a legal-sufficiency review, we must view the evidence in the light most favorable to the district court's findings, "crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not."  *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005).  Moreover, we must indulge every reasonable inference that would support the district court's findings.  *Id.* at 822.  The ultimate test for legal sufficiency is whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review.  *See id.* at 827.

When a party challenges the factual sufficiency of the evidence supporting an adverse finding on an issue on which that party had the burden of proof, we consider whether the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust.

*Francis*, 46 S.W.3d at 241. In either case, we must consider, weigh, and examine all of the evidence in the record, both in support of and against the finding, to decide whether the finding should be set aside. *See id.*; *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989); *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986).

As to the district court's judgment granting Ruby's bill of review—whether rendered in 1987 or 2007—Maxie has presented no record for our review. The only documents available from that proceeding are the petition, the answer, and the final decree of divorce. In the absence of a reporter's record and findings of fact and conclusions of law, we presume all facts necessary to support the judgment. *Guthrie v. Nat'l Homes Corp.*, 394 S.W.2d 494, 495 (Tex. 1965); *Scott v. Schneider Estate Trust*, 783 S.W.2d 26, 28 (Tex. App.—Austin 1990, no writ). This includes the finding that Ruby did not voluntarily accept the benefits of the 1986 divorce decree.

Our conclusion is the same even if we also review the evidence presented at the new trial, as Maxie's briefing seems to suggest we should.[1] The 1986 decree awarded Ruby the following property: (1) all the furniture, furnishings, fixtures, goods, appliances and equipment in her possession, (2) all clothing, jewelry, and other personal effects in her possession, (3) the 1974 Volkswagen, and (4) the house at Reicher Drive. At trial, Ruby testified that she simply maintained possession of the property at issue, which—at that time—she considered to be community property. She continued to live in the house on Reicher Drive, unaware, at the time, that Maxie had signed a deed conveying his interest in the house to her, and, indeed, continued to

---

[1] As explained above, our analysis here would be as of 1987, when judgment was orally pronounced, rather than as of 2007, when judgment was reduced to writing.

5

ask Maxie to help pay the mortgage on the house. She, likewise, maintained possession of the 1974 Volkswagen, which did not run and which she did not drive. Ruby testified that she considered the Volkswagen to be community property. Indeed, the evidence shows the 1986 decree was a default judgment taken by Maxie without Ruby's knowledge. When Ruby learned of the judgment in 1987, she filed her petition for bill of review, seeking to vacate the judgment.

On this record, even considering the evidence presented at the motion for new trial, we cannot conclude that Maxie has demonstrated that the evidence conclusively establishes that Ruby voluntarily accepted the benefits of the 1986 divorce decree, as required to prevail on legal sufficiency grounds. *See Francis*, 46 S.W.3d at 241. Nor can we conclude that Maxie has shown that the district court's finding that Ruby did not voluntarily accept the benefits of the 1986 decree is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust, as required to prevail on factual sufficiency grounds. *See id.* Accordingly, we overrule Maxie's second issue.

In his third issue, Maxie argues that the district court erred by awarding Ruby all of the funds on deposit in the registry of the court. The district court signed temporary orders on September 27, 2007, under which Maxie was required to deposit $1,050 into the registry of the court each month. In the final decree of divorce, signed December 12, 2008, the district court's property division included an award of all monies in the registry to Ruby. According to Maxie, however, "there is no evidentiary support for the proposition that the correct amount of Ruby Mae Linton's interest in the military retirement is equal to the $1,050.00 that has been deposited into the registry of the court each month for the past year."

6

The trial court has broad discretion in dividing the marital estate at divorce. *See Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981). On appeal, we presume that the trial court exercised this discretion properly and will reverse the cause only where there is a clear abuse of discretion. *See Bell v. Bell*, 513 S.W.2d 20, 22 (Tex. 1974). A clear abuse of discretion is shown only if the division of the property is manifestly unjust. *See Mann v. Mann*, 607 S.W.2d 243, 245 (Tex. 1980). "The party attacking the property division bears the heavy burden of showing that the trial court's property division was not just and right." *Pletcher v. Goetz*, 9 S.W.3d 442, 446 (Tex. App.—Fort Worth 1999, pet. denied).

The 2008 final decree of divorce awarded Ruby a percentage of Maxie's disposable military retired pay. The record shows that, beginning in late 1987, following the original divorce proceedings, Maxie had instructed that voluntary payments in the amount of $900 per month be made to Ruby from his military retired pay account. Beginning in June 2003, however, according to Maxie's instructions, payments ceased. On September 1, 2007, pursuant to the district court's temporary orders, Maxie began paying $1,050 per month into the court's registry to account for retirement payments owed while the case was pending. By the time the final decree was signed and the funds disbursed to Ruby, the total amount in the court registry was $16,800.

The property division set out in the 2008 final decree of divorce was as of June 30, 1986. The decree awarded Ruby a monthly percentage of Maxie's military retirement benefits, to be calculated by statutory formula.[2] It is undisputed that Maxie made no payments to Ruby after

---

[2] The district court found—and the parties do not dispute—that, in accordance with the provisions of the Uniformed Services Former Spouses' Protection Act in effect on June 30, 1986, Ruby would be entitled to a percentage of Maxie's military retirement pay, to be computed by

May 31, 2003. While the exact amount owed to Ruby for the period of arrearage—or the exact amount owed to Ruby during the months that the case was pending and Maxie was contributing funds to the registry—is not entirely clear from the record, it is clear that, according to the 2008 decree, Ruby was to receive retirement payments from Maxie from June 30, 1986, and that no payments had been made since May 2003.

Ruby presented a statement from the Defense Finance and Accounting Service showing that Maxie's net retirement pay from June 1, 2003 to June 30, 2007 totaled $89,798.60. Applying the formula set out by the court in its final decree, Ruby's percentage of this arrearage would be $26,690.14. Alternatively, there was evidence, including Maxie's testimony that, between 2003 and 2007, the time period during which no military benefits were paid to Ruby, Maxie's gross military pay was between $2,944 and $3,318 per month, and additional documentary evidence shows that net pay on those amounts would be $1,585.85 and $2,166.23, respectively. According to formula, Maxie's percentage would range from $471.35 to $643.85. However, Maxie also presented some evidence that, through his voluntary $900 monthly payments from 1987 through 2003, even while accounting for years during which no payments at all were made, he had paid more to Ruby than she would ultimately be entitled to under the decree.

At the conclusion of trial, it was clear that the parties still needed to reconcile retirement payments made with retirement payments required. Following the presentation of evidence, the district court found that the 1986 division was just and right, except that Ruby was

_____

multiplying one-half times a fraction, the numerator of which is 214 months of marriage during Maxie's creditable military service, divided by 360, Maxie's total number of months of creditable military service.

8

entitled to one-half of the community interest in Maxie's military retirement. As for determining the correct division of retirement funds, the court stated:

> Now, my preferred method of proceeding would be for the military to calculate that up and tell us what amount she should have received each month from the divorce until today, and then with that information, I can decide, based on what she did receive through this allotment that he voluntarily set up versus what she should have received and what's in the Court registry, who owes what to whom. But I think that's the correct way to do it, is to ask them to make that calculation for us. And that way that avoids possible error on this Court's part and invites further litigation, which will cost the parties more money.
>
> So that's what I'm instructing you all to do, is to inquire about that.

Having so found, the court ordered that the funds remain in the registry until the parties could sort out the amounts owed, and further ordered that Maxie continue to pay the monthly sum of $1,050 into the court registry until the parties could "sort it out" and present the court a judgment.

Following the conclusion of trial and the court's directive, the record contains no additional evidence on this matter. A final decree of divorce was signed on December 12, 2008. The December 12 decree ordered that all funds in the court's registry be paid to Ruby. In its findings of fact and conclusions of law, the court found and concluded that:

> [I]t is just and right as part of the property division to award Respondent the money on deposit in the registry of the District Clerk.

Although, as explained above, the record is unclear as to who owes what to whom, there was evidence to support this finding, as Ruby presented evidence showing that she had received no retirement payments at all beginning in June 2003.

9

In light of this evidence and the absence of further evidence following the court's directive to the parties to make further inquiries with the military, we cannot conclude that Maxie has met his heavy burden of showing that the district court's property division was manifestly unjust. *See Mann*, 607 S.W.2d at 245; *Pletcher*, 9 S.W.3d at 446. We find no clear abuse of discretion in the district court's property division, *see Bell*, 513 S.W.2d at 22, and, accordingly, overrule Maxie's third issue.

## CONCLUSION

Having overruled each of Maxie's issues, we affirm the district court's judgment.

_____

Bob Pemberton, Justice

Before Justices Patterson, Puryear and Pemberton

Affirmed

Filed:   July 22, 2010

10