TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-11-00467-CV






Mohammad Ashraf, Appellant


v.


Shahnaz Ashraf, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT

NO. D-1-FM-07-002895, HONORABLE GISELA D. TRIANA-DOYAL, JUDGE PRESIDING




M E M O R A N D U M O P I N I O N



 Appellant Mohammad Ashraf appeals from the final decree in his divorce proceeding
from appellee Shahnaz Ashraf. (1) Appellant challenges portions of the decree dividing property
between the parties and claims that he received ineffective assistance of counsel at trial. Because
we hold that there is no error in the divorce decree, we affirm the trial court's judgment.


BACKGROUND

 The parties were married in February 1981. (2) Ashraf earned a degree in architecture
from the University of Nebraska at Lincoln and went on to work for Travis County, the City of
Austin, and the Texas Department of Transportation. Khan earned a degree in home economics in
Pakistan, but seldom worked outside the home during the marriage, instead staying home to raise
the parties' son and daughter, who are now adults. Khan filed for divorce in June 2007, citing
insupportability as well as cruelty and adultery on the part of Ashraf.

 The trial court heard the case on July 29, 2010. However, the trial was temporarily
delayed when Ashraf failed to appear on time. Ashraf's attorney informed the court that Ashraf was
at his doctor's office and would arrive shortly. When Ashraf appeared, he presented the court with
a doctor's letter requesting that the trial be postponed due to medical problems affecting Ashraf.
Khan's attorney argued that the letter was a stalling tactic by Ashraf. Noting that the parties'
daughter had flown in to testify and that the case had already dragged on for three years, causing
great distress to Khan, her attorney requested that the trial go forward. The court stated, "Well, I
don't think--this is just a request. It doesn't say he's unable to participate, so I'm going to go ahead,
and we're not going to--I'll deny the continuance and just go on and get this done."

 The parties proceeded to explain their proposals for the division of property. Khan
requested a disproportionate share of the estate, including the family home; 50% of the value of an
empty lot owned by the parties in their neighborhood, worth about $30,000; and a 70% share of the
four retirement accounts in Ashraf's name, which the parties stipulated were worth about $1,580 in
income per month. Khan cited fraud on the community by Ashraf as the basis for this division.
Khan also asked that she and her son retain the Lexus vehicles they had each been driving and that
Ashraf receive the 1998 Honda Civic he had been driving. Based on her limited earning potential
and family violence committed by Ashraf, Khan requested spousal maintenance. (3) See Tex. Fam. Code
Ann. § 8.051 (West 2006). Finally, she requested that the court award her $7,500 in attorney's fees.

 In support of her proposal, Khan presented testimony from herself, her attorney, and
the parties' grown daughter, Mahim Ashraf. (4) Khan first testified as to her allegation that Ashraf was
guilty of cruelty. She gave examples of malicious and controlling behavior by Ashraf throughout
their marriage. For example, Khan testified that Ashraf once poured an entire gallon of milk over
her head when she had just finished taking a shower. She stated that Ashraf did not permit their
children to have any interactions with members of the opposite sex. In addition, Khan claimed that
Ashraf was controlling with money, making her show him each load of laundry she needed to wash
before he would give her coins for the laundry machines at the rental property where they once lived.
Khan testified that Ashraf rarely permitted her to work outside the home, so she had only sporadic
work experience as a substitute day care provider and at a department store.

 Khan also described several instances of physical abuse by Ashraf, including "[a]
couple of times" when he hit or pushed her. Khan also described an incident when Ashraf hit her
with a remote control for refusing to turn on the television for him. Khan further contended that
Ashraf physically abused their children, beginning when the oldest was just ten months old. Finally,
she stated that Ashraf's 2008 arrest for family violence occurred after he pulled Khan's hair and
pushed her into a wall, causing a reddish mark on her back.

 Additionally, Khan testified that Ashraf had allowed their home to fall into disrepair.
She claimed that the house suffered minor water damage in 2001 or 2002, but because Ashraf never
repaired it, water built up in the wall and eventually seeped into the living room and the furniture.
Khan stated that her children were embarrassed by the state of the house and stopped having friends
over to visit. According to Khan, her lack of access to the family finances prevented her from taking
action to repair the house. She testified that Ashraf opened a home equity line of credit for $50,000
with Compass Bank, claiming he would use the money to make repairs. However, Ashraf did not
permit Khan to sign the deposit form so that she could also withdraw from the line of credit. Khan
testified that the home equity funds were not used to repair the home after all. Instead, according
to Khan, Ashraf used the money to buy two Lexus automobiles.

 The court admitted photos of the home into evidence. One photo depicted a rat inside
the home. Khan testified that there were "a couple" of rats at one point, although they were gone by
the time of trial. Khan also stated that there were cockroaches throughout the home and these were
never exterminated because Ashraf believed it would be a waste of money. Khan testified that the
photos had been taken between 2006 and 2008, but reflected the conditions she had been living in
for the past ten years. She testified that the tax appraisal value of the home was approximately
$121,000. However, Khan claimed, three real estate agents had appraised the home at closer to
$105,000 due to its condition.

 Khan testified as to her belief that Ashraf had committed adultery, stating that she
"caught him cheating . . . over the phone" and "caught him in the driveway with a girl." Additionally,
Khan testified with regard to her claim that Ashraf was guilty of fraud on the community. Khan
stated that Ashraf purchased the second Lexus with the home equity line of credit in violation of
temporary orders entered by the trial court enjoining Ashraf from using that account. She further
testified that Ashraf had begun drawing from a retirement account with the Employees Retirement
System (ERS) despite temporary orders prohibiting either party from doing so.

 Moreover, Khan testified that the empty lot did not belong to Ashraf's sister, as
Ashraf claimed. She testified that Ashraf at one point leased the property to a construction company
that was working on a nearby road for six months. Further, Khan claimed that even after she filed
for divorce, Ashraf approached her about building a new home on the lot. She stated that she had
seen drawings and plans Ashraf had created for the project. Khan further stated that she heard
Ashraf tell a friend that the lot would pass to Ashraf's children when he died.

 The parties' twenty-six-year-old daughter, Mahim, also testified in support of her
mother's claims. Mahim testified that Ashraf had frequently beaten his children. She stated that
Ashraf would pull the children up by the hair if he found them seated in his chair at the dining table.
Mahim said Ashraf hit her on a regular basis, mostly slapping her on the face but also punching her
or twisting her arms. Mahim also testified that, while her brother was standing up to use the toilet,
her father would push open the bathroom door and tell him he needed to sit down to use the toilet.
Ashraf would then stop his son in the middle of urinating and tell him to sit down. Mahim also
testified that Ashraf had abused Khan throughout the children's lives. She recalled one incident
when Ashraf threw a television remote at Khan's back and another, in April 2008, when Mahim
called the police after Ashraf pulled Khan's hair and pushed her against the wall.

 Mahim also corroborated that Ashraf restricted the family's access to money. "We
never saw money or got money or received allowance or anything," Mahim testified. She stated that
her mother obtained money and food from family and community members, shopped at Goodwill,
and used credit cards for basic household items. According to Mahim, Ashraf behaved as if it would
be ludicrous for Khan to request his financial support. Mahim added that the family home was an
unhealthy, unsanitary environment as a result.

 Ashraf was the only witness to testify in favor of his proposal. He requested an even
division of the parties' estate, proposing either that Khan receive the entire house and Ashraf receive
all of his retirement income, or that the house be sold and the proceeds divided evenly while the
retirement would also be divided evenly. Ashraf claimed that the empty lot should not be divided
between the parties because it belonged to his sister. Finally, Ashraf requested either that he receive
a better vehicle than the Honda Civic or that all of the vehicles be sold and the proceeds be split
evenly between the parties.

 In support of his case, Ashraf testified that he could not find work and described
the fixed monthly income he received through Social Security and two retirement funds. Ashraf
admitted that he began drawing from his ERS account during the divorce. However, Ashraf also
claimed that he repaid Khan for the withdrawal by using the money for utilities, taxes, and mortgage
payments on the family home. He also asserted that the withdrawal was permitted under temporary
orders that the trial court had previously entered providing for the payment of property taxes during
the pendency of the divorce.

 Ashraf testified that he disciplined his children, but never abused them. He contended
that he only struck Mahim one time, when he spanked her for beating her brother. Ashraf argued that
the children had been brainwashed by Khan, who had always hated him, into believing he was a bad
person. Ashraf testified that he always provided for his family, funding the children's room and
board in college and paying extra on the mortgage so that they could keep the home if he died.

 Ashraf claimed that he did use funds from the home equity line of credit for some
repairs, such as installing new tile in the bathrooms and entryway and enlarging the kitchen in the
home. However, Ashraf admitted to taking money from that account to purchase vehicles. With
respect to the empty lot at issue, Ashraf testified that he purchased it for his sister in Pakistan.
Ashraf stressed that his sister had been responsible for paying taxes on the lot, except when he leased
it to a construction company on her behalf and paid the taxes with the proceeds.

 While cross-examining Ashraf, Khan's attorney offered evidence of Ashraf's alleged
adultery. This included a Valentine's Day card from one woman, an affectionate e-mail from another,
and documentation that Ashraf purchased a Southwest Airlines gift card for a female friend to travel
to Austin. When asked if he remembered sending e-mails inviting a woman to have sex with him,
Ashraf responded, "I don't remember." Later he asked, "Where is your proof that I slept with her?
Just because I wrote that, sent that e-mail, does that mean I slept with her?" Ashraf admitted that
he had "made mistakes" and "done something destructive" during the marriage, but only as a response
to Khan being unfaithful many times.

 After this testimony, as well as the testimony of the parties' attorneys concerning the
fees they were owed, the court orally announced its decree. The court stated, "I can't totally go along
with what [Khan] wishes this court to do," but expressed that "Mr. Ashraf may need a little bit of
penalty for some of the complications he's caused." Thus, the court granted the divorce and:



 
 Awarded the house to Khan, asserting that Ashraf "needs to get out";
 Ordered the empty lot to be sold and divided evenly, stating, "I have no evidence,
other than the lot . . . belongs to the community";
 Awarded the Honda Civic, the Datsun, and the two Lexus vehicles in the same
manner as the temporary orders and Khan's request;
 Ordered "the retirement" to be "split 50/50" on the grounds that "[s]he's entitled to
it, and I know she's getting the house. But looking at these pictures, it might cost
another $50,000 to get that house in tip-top shape, too. So I think that's about as fair
as this Court's going to be"; and
 



 
 Ordered Ashraf to pay $3,000 in fees to Khan's attorney.
 



Khan subsequently filed a motion to enter judgment with a proposed final decree based on the trial
court's oral pronouncement. On November 24, 2010, at the hearing on Khan's motion, the court
entered a Final Decree of Divorce matching Khan's proposed decree. (5) On December 27, 2010,
Ashraf filed a motion for new trial. The trial court denied Ashraf's motion, and Ashraf now appeals
pro se.

 In his pro se brief on appeal, Ashraf presents the following arguments: (1) that he
received ineffective assistance of counsel that prejudiced the outcome in his case; (2) that the trial
court abused its discretion in denying his motion for continuance; (3) that the final divorce decree
was not approved by Ashraf's counsel and differed from the decree announced orally at the
conclusion of the trial; and (4) that the trial court abused its discretion in making the division of
property because the evidence was legally and factually insufficient to support the order. (6)

 Khan responds that the doctrine of ineffective assistance of counsel is inapplicable
in civil divorce cases; that Ashraf received notice of the final divorce decree and failed to preserve
any complaint as to its contents; and that the trial court did not abuse its discretion in denying the
continuance or making the property division. In one cross-point, Khan requests that we subject
Ashraf to sanctions for filing a frivolous appeal. See Tex. R. App. P. 45.


DISCUSSION


Ineffective assistance of counsel

 Ashraf primarily complains that his trial counsel provided ineffective assistance. In
support of this claim, Ashraf alleges that his counsel: (1) called him to testify despite Ashraf being
very ill and under the influence of prescription medications, the side effects of which caused Ashraf
to give incomprehensible testimony; (2) failed to object to the admission of outdated photographs
of the family home and to offer evidence that Ashraf had made certain repairs; (3) failed to present
other evidence, such as an inventory of community property and documents showing that Ashraf had
paid more than required toward the mortgage each month; and (4) failed to respond when opposing
counsel did not serve the proposed final divorce decree on Ashraf or his counsel.

 The United States Supreme Court has recognized that ineffective assistance of
counsel is a violation of the Sixth Amendment right to counsel. See Strickland v. Washington,
466 U.S. 668, 686 (1984). However,

[i]t is well established that the doctrine of ineffective assistance of counsel does
not extend to civil cases. The Sixth Amendment of the United States Constitution
and Article I, Section 10 of the Texas Constitution provide that 'in all criminal
prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel
for his defense.' Thus, by their plain language neither the Sixth Amendment nor
Article I, Section 10 apply to civil cases.



Cherqui v. Westheimer St. Festival Corp., 116 S.W.3d 337, 343 (Tex. App.--Houston [14th Dist.]
2003, no pet.); see also McCoy v. Texas Instruments, Inc., 183 S.W.3d 548, 553 (Tex. App.--Dallas
2006, no pet.). An exception to the general rule has been created with regard to trial counsel in
parental termination cases. See In re M.S., 115 S.W.3d 534, 544 (Tex. 2003). However, the case
before us does not concern parental rights. Accordingly, the doctrine of ineffective assistance is
inapplicable, and we overrule this issue on appeal.


Motion for continuance

 We next consider Ashraf's complaint regarding the trial court's denial of his
motion for continuance. We review the grant or denial of a motion for continuance for an abuse
of discretion. BMC Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 800 (Tex. 2002) (citing
Villegas v. Carter, 711 S.W.2d 624, 626 (Tex. 1986)); Rocha v. Faltys, 69 S.W.3d 315, 318-19
(Tex. App.--Austin 2002, no pet.). This Court cannot overrule the trial court's decision unless the
trial court acted unreasonably or in an arbitrary manner, "without reference to any guiding rules and
principles." Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex. 1991) (quoting Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985)).

 According to Ashraf, the trial court "abused its discretion by denying [his] Motion
for Continuance which was supported by a doctor's statement of medical impairment and the effects
of eight prescription drugs on [Ashraf]." The doctor's letter was not made part of the record in this
case. However, in support of this argument, Ashraf asserts that portions of his testimony at trial were
incoherent, "full of incomplete sentences," and indicative of confusion and agitation on his part. He
also notes that Khan's attorney commented on Ashraf's "recalcitrant nature, the fact that he wants
to argue with me and spar with me" in his closing argument to the court. (7)

 However, this evidence is insufficient to demonstrate that the trial court abused its
discretion in denying the continuance. In exercising its discretion, the trial court could have taken
into account the entire procedural history of this case. See Waste Water, Inc. v. Alpha Finishing &
Developing Corp., 874 S.W.2d 940, 942 (Tex. App.--Houston [14th Dist.] 1994, no writ). Thus,
when presented with Ashraf's motion, the trial court could have considered not only the statement
by Ashraf's doctor but also the long duration of the case up until that point, including multiple
continuances and failed attempts at alternative dispute resolution. The court could also have
considered the suggestion by Khan's attorney that Ashraf was only attempting to stall again and the
fact that a witness had flown in to testify. Further, as the trial court observed when presented with
the doctor's statement, it was merely a request and did not state that Ashraf was unable to participate.

 As a result, we cannot conclude that the court acted unreasonably or in an arbitrary
manner, "without reference to any guiding rules and principles," in denying Ashraf's motion for
continuance. See Beaumont Bank, N.A., 806 S.W.2d at 226. We overrule this issue on appeal.

Final decree of divorce

 Ashraf also argues that the trial court "abused its discretion in signing a written decree
that was not approved by counsel and contains orders dividing property that was not divided by the
Trial Judge." According to Ashraf, he and his attorney "were not provided a copy or asked to sign
the Final Decree of Divorce" and thus were "denied the right to review [it] for correctness."

 In response to this issue, Khan directs us to her motion to enter judgment contained
in the clerk's record. The motion states that Khan's proposed decree was submitted to Ashraf's
attorney on two occasions. The motion also includes a copy of the proposed decree, notice of the
hearing set for November 24, 2010, and a certificate of service averring that the motion was served
on Ashraf's attorney by facsimile transmission on November 19, 2010. Khan asserts that, "[a]fter
being given an opportunity to present evidence and object to the proposed order, Mr. Ashraf cannot
complain for the first time on appeal." See Tex. R. App. P. 33.1.

 We agree. To preserve a complaint for appellate review, a party must make the
complaint to the trial court by timely request, objection, or motion, state the specific grounds
therefore, and obtain a ruling. Id. The record does not demonstrate that Ashraf attended the hearing
on the entry of the decree or made any request, objection, or motion with regard to its contents. By
failing to take these measures after receiving notice, Ashraf did not preserve any issue for our review.
See Ricks v. Ricks, 169 S.W.3d 523, 528 (Tex. App.--Dallas 2005, no pet.); see also Wright v.
Wright, No. 03-08-00485-CV, 2009 Tex. App. LEXIS 8563, at *2 (Tex. App.--Austin Nov. 3, 2009,
no pet.) (mem. op.); Rebelloso v. Rebelloso, No. 03-96-00614-CV, 1997 Tex. App. LEXIS 3468, at
*8 (Tex. App.--Austin July 3, 1997, no pet.) (mem. op., not designated for publication). (8) We
therefore do not need to evaluate Ashraf's claim that the final decree diverged from what was orally
announced at trial. See Tex. R. App. P. 44.1. We overrule this issue on appeal.



Division of property

 Finally, Ashraf complains about the division of property in the trial court's final
divorce decree. Specifically, he argues that the trial court "abused its discretion in making the
property division and . . . in giving non-community property to [Khan] and community property to
[the parties' son], with no facts to support it."

 "In a decree of divorce or annulment, the court shall order a division of the estate
of the parties in a manner that the court deems just and right, having due regard for the rights of
each party and any children of the marriage." Tex. Fam. Code Ann. § 7.001 (West 2006). The
factors to be considered in the trial court's division of the estate include: (1) fault in breaking up
the marriage; (2) the spouses' capacities and abilities; (3) business opportunities; (4) education;
(5) relative physical conditions; (6) relative financial conditions and obligations; (7) disparity of
ages; (8) sizes of separate estates; (9) the nature of the property; and (10) disparity in earning
capacities or incomes. See Murff v. Murff, 615 S.W.2d 696, 698 (Tex. 1981).

 The trial court has broad discretion in dividing the marital estate at divorce. See id.
at 699. On appeal, we presume that the trial court exercised this discretion properly and will reverse
the cause only where there is a clear abuse of discretion. See Bell v. Bell, 513 S.W.2d 20, 22 (Tex.
1974). A clear abuse of discretion is shown only if the division of the property is manifestly unjust.
See Mann v. Mann, 607 S.W.2d 243, 245 (Tex. 1980). "The party attacking the property division
bears the heavy burden of showing that the trial court's property division was not just and right."
Pletcher v. Goetz, 9 S.W.3d 442, 446 (Tex. App.--Fort Worth 1999, pet. denied).

 Khan responds to Ashraf's argument by stressing that the trial court received evidence
that Ashraf was at fault in breaking up the marriage through his controlling, abusive, and neglectful
conduct and that he had greater business opportunities, education, and earning capacity than Khan.
She concludes that the disproportionate division of the estate was therefore amply supported. We
agree that Ashaf has not met "the heavy burden of showing that the trial court's property division
was not just and right." Pletcher, 9 S.W.3d at 446.

 For example, Ashraf complains of the trial court's award of the entire family home
to Khan. However, the court heard evidence that the home was worth between $105,000 and
$121,000; that it was subject to a home equity line of credit with which at least two vehicles had
been purchased; and that it required considerable repairs, which were the original justification for
the line of credit of $50,000. (9) Accordingly, the house represented a mixture of financial assets and
liabilities. The court also heard evidence that Ashraf had abused Khan and their children throughout
the marriage, failed to maintain their home, and prohibited basic sanitary measures like pest
extermination, contributing significantly to the breakup of the marriage. Consequently, we cannot
conclude that the trial court was manifestly unjust to award the house to Khan.

 Ashraf also claims that it was manifestly unjust to award Khan the entirety of her
401(k) account while dividing his retirement accounts equally between the parties. At trial, the
parties stipulated that Ashraf's various retirement accounts offered him approximately $1,580
in income each month. Meanwhile, the court heard evidence that Khan's only retirement account
was a 401(k) worth approximately $6,000 in total and that Khan, unlike Ashraf, was not yet eligible
for Social Security income. In addition, the court heard that Khan possessed a degree in home
economics from Pakistan and had scant work history while Ashraf possessed an architecture
degree from the United States and had worked in architecture for decades. For these reasons, in
addition to the evidence of abuse discussed above, we cannot agree with Ashraf. The division of the
retirement accounts was not manifestly unjust and therefore not a clear abuse of discretion on the
part of the trial court. See Bell, 513 S.W.2d at 22; Mann, 607 S.W.2d at 245.

 Ashraf also claims that insufficient evidence supported the trial court's award of two
vehicles, the second Lexus and a 1974 Datsun, to the parties' son while Ashraf received only the
1998 Honda Civic. However, Khan testified that her son had purchased the Datsun with his own
money and that Ashraf explicitly said he was buying the second Lexus for their son. Additionally,
the trial court heard that Ashraf purchased at least one of the vehicles using the home equity line of
credit in violation of a court order. Consequently, in distributing the vehicles and stating, "That
seems to be what the parties intended at the time, for [their son] to drive the Lexus," the trial court
did not abuse its discretion. (10)

 Finally, Ashraf argues that the court abused its discretion in distributing the proceeds
from the empty lot between the parties. Ashraf testified at trial that he purchased the lot for his sister
and that she had largely been responsible for paying property taxes on it, for which reason the lot
was not community property. However, the court was presented with evidence contradicting that
proposition. There was evidence that the lot was purchased in Ashraf's name, but that another man
had been listed as the owner with Travis County. That man, whom Ashraf described as a friend in
Houston, submitted an affidavit disclaiming ownership of the lot and averring that it belonged to
Ashraf, which suggested there was some subterfuge by Ashraf with regard to the lot. Moreover,
Khan testified as to various specific circumstances, such as Ashraf planning to build on the lot and
telling a friend that the lot would pass to his children upon his death, indicating that it did not belong
to Ashraf's sister.

 Under the family code, all property possessed by either spouse during or on the
dissolution of a marriage is presumed to be community property. Tex. Fam. Code Ann. § 3.003(a)
(West 2006); Harrison v. Harrison, 321 S.W.3d 899, 902 (Tex. App.--Houston [14th Dist.] 2010,
no pet.). To overcome this presumption, a spouse who claims that an asset is separate property
must establish that fact by clear and convincing evidence and must trace and clearly identify the
property claimed. Tex. Fam. Code Ann. § 3.003(b) (West 2006). In addition, as the finder of fact,
the trial court is the sole judge of the witnesses' credibility and the weight to be given their testimony.
Iliff v. Iliff, 339 S.W.3d 74, 83 (Tex. 2011). Here, given the significant evidence supporting Khan's
characterization of the lot, the trial court could have found that Ashraf did not provide clear and
convincing evidence to rebut the presumption that the lot was community property. Thus, it was not
manifestly unjust to award half of the lot's value to Khan. (11) 

 For the above reasons, Ashraf has failed to demonstrate that the trial court's division
of property was not just and right. Pletcher, 9 S.W.3d at 446. We hold that the property division
was not manifestly unjust and therefore not a clear abuse of discretion. See Bell, 513 S.W.2d at 22;
Mann, 607 S.W.2d at 245. We overrule this issue on appeal.


Damages for frivolous appeal

 In a cross-point on appeal, Khan requests that this Court find Ashraf's appeal to be
frivolous and award damages in the amount of $5,000. See Tex. R. App. P. 45 (permitting an
appellate court to award a prevailing party "just damages" for "frivolous" appeals).

 In determining whether an appeal is frivolous, we apply an objective test, reviewing
the record from the viewpoint of the advocate and deciding whether the advocate had reasonable
grounds to believe the judgment could be reversed. Smith v. Brown, 51 S.W.3d 376, 380 (Tex.
App.--Houston [1st Dist.] 2001, pet. denied). Whether to grant sanctions for a frivolous appeal is a
matter of discretion that an appellate court exercises with prudence and caution and only after careful
deliberation in truly egregious circumstances. Goss v. Houston Cmty. Newspapers, 252 S.W.3d 652,
657 (Tex. App.--Houston [14th Dist.] 2008, no pet.).

 Although we have noted various deficiencies in Ashraf's appeal, and although we
have rejected his arguments, Khan has not demonstrated that Ashraf's appeal is among the "truly
egregious circumstances" for which we would award damages. See id. We therefore exercise our
discretion to deny Khan's request for sanctions and overrule her cross-point on appeal.


CONCLUSION

 We affirm the final decree of divorce. (12)


 __________________________________________

 Diane M. Henson, Justice

Before Justices Puryear, Henson, and Goodwin

Affirmed

Filed: May 24, 2012

1. At the appellee's request, the divorce decree ordered that her name be changed back to her
maiden name of Shahnaz Khan. Accordingly, we will hereinafter refer to the appellant as "Ashraf"
and the appellee as "Khan" for clarity.
2. The facts recited herein are taken from the testimony presented at trial.
3. In April 2008, Ashraf was arrested for family violence. He was tried and convicted of
family violence assault. See Tex. Penal Code Ann. § 22.01 (West 2011).
4. Because the parties' daughter shares the appellant's last name, we will refer to her by her
first name for clarity.
5. The decree bears the signatures of Khan and her attorney, but not Ashraf or his attorney.
The record does not establish, but neither party appears to dispute, that Ashraf and his attorney did
not attend the hearing.
6. In his list of "Points for Review," Ashraf identifies only two issues: (1) that he received
ineffective assistance of counsel and (2) that the trial court abused its discretion in making the
property division. However, he introduces additional issues in the body and conclusion of his brief,
and we will consider these as points of error on appeal. See Giddens v. Brooks, 92 S.W.3d 878, 880
(Tex. App.--Beaumont 2002, pet. denied) (pro se pleadings and briefs are to be liberally construed).
7. Ashraf has attached various documents to his brief, including several pages describing
the side effects of medications. However, these are not a part of the appellate record, and we do
not consider them. See Adams v. Reynolds Tile & Flooring, Inc., 120 S.W.3d 417, 423 (Tex.
App.--Houston [14th Dist.] 2003, no pet.) ("[T]he attachment of documents as exhibits or
appendices to briefs does not constitute formal inclusion in the record on appeal and, therefore,
[such documents] cannot be considered.").
8. To the extent that Ashraf may mean to argue that he could not preserve error because he
never received notice, we note that a certificate of service is prima facie evidence that notice was
sent, and notice properly sent under rule 21a raises a presumption that notice was received. See Tex.
R. Civ. P. 21a; Mathis v. Lockwood, 166 S.W.3d 743, 745 (Tex. 2005). In the present case, Khan's
motion to enter judgment demonstrates that notice of the proposed decree and hearing was properly
sent to Ashraf's attorney. Nothing in rule 21a precludes a party from offering proof that notice was
not received. Tex. R. Civ. P. 21a. However, Ashraf offers only unsupported statements suggesting
that he did not receive notice. Accordingly, we must presume that Ashraf received notice and
nevertheless did not complain of the decree's contents.
9. After examining the photos admitted into evidence, the trial court opined that "it might cost
another $50,000 to get that house in tip-top shape." Ashraf claims this statement is an abuse of
discretion in itself, since even experts cannot conclusively discern repair costs from a few pictures.
However, we understand the comment to refer to the evidence that a $50,000 home equity line of
credit was obtained for the purpose of repairing the home. Given the additional testimony that few
if any repairs were actually made, it was not manifestly unjust for the trial court to state that the
remaining repairs might require the same amount of money originally earmarked for that purpose.
10. The Lexus and Datsun vehicles were awarded to Khan with the understanding that she
would give them to the parties' son.
11. Ashraf also argues that the trial court abused its discretion in refusing to hear evidence of
an inheritance received by Khan. However, the record shows that Khan was questioned only as to
any inheritance she might receive in the future, and the trial court sustained an objection due to
relevance. Further, to complain on appeal that a trial court erroneously excluded evidence, the
substance of the evidence must be made known to the trial court by an offer of proof. Tex. R. Evid.
103(a)(2); Tex. R. App. P. 33.1. Having failed to make such an offer, Ashraf has not preserved this
complaint for appeal.
12. Khan filed a motion, which is pending before this Court, to accelerate this appeal or to
provide for enforcement of the trial court's final decree. We dismiss the motion as moot.