# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00467-CV

**Mohammad Ashraf, Appellant**

**v.**

**Shahnaz Ashraf, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
### NO. D-1-FM-07-002895, HONORABLE GISELA D. TRIANA-DOYAL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Mohammad Ashraf appeals from the final decree in his divorce proceeding from appellee Shahnaz Ashraf.[1]  Appellant challenges portions of the decree dividing property between the parties and claims that he received ineffective assistance of counsel at trial.  Because we hold that there is no error in the divorce decree, we affirm the trial court's judgment.

## BACKGROUND

The parties were married in February 1981.[2]  Ashraf earned a degree in architecture from the University of Nebraska at Lincoln and went on to work for Travis County, the City of

---

[1]  At the appellee's request, the divorce decree ordered that her name be changed back to her maiden name of Shahnaz Khan.  Accordingly, we will hereinafter refer to the appellant as "Ashraf" and the appellee as "Khan" for clarity.

[2]  The facts recited herein are taken from the testimony presented at trial.

Austin, and the Texas Department of Transportation. Khan earned a degree in home economics in Pakistan, but seldom worked outside the home during the marriage, instead staying home to raise the parties' son and daughter, who are now adults. Khan filed for divorce in June 2007, citing insupportability as well as cruelty and adultery on the part of Ashraf.

The trial court heard the case on July 29, 2010. However, the trial was temporarily delayed when Ashraf failed to appear on time. Ashraf's attorney informed the court that Ashraf was at his doctor's office and would arrive shortly. When Ashraf appeared, he presented the court with a doctor's letter requesting that the trial be postponed due to medical problems affecting Ashraf. Khan's attorney argued that the letter was a stalling tactic by Ashraf. Noting that the parties' daughter had flown in to testify and that the case had already dragged on for three years, causing great distress to Khan, her attorney requested that the trial go forward. The court stated, "Well, I don't think—this is just a request. It doesn't say he's unable to participate, so I'm going to go ahead, and we're not going to—I'll deny the continuance and just go on and get this done."

The parties proceeded to explain their proposals for the division of property. Khan requested a disproportionate share of the estate, including the family home; 50% of the value of an empty lot owned by the parties in their neighborhood, worth about $30,000; and a 70% share of the four retirement accounts in Ashraf's name, which the parties stipulated were worth about $1,580 in income per month. Khan cited fraud on the community by Ashraf as the basis for this division. Khan also asked that she and her son retain the Lexus vehicles they had each been driving and that Ashraf receive the 1998 Honda Civic he had been driving. Based on her limited earning potential

and family violence committed by Ashraf, Khan requested spousal maintenance.[3] *See* Tex. Fam. Code Ann. § 8.051 (West 2006). Finally, she requested that the court award her $7,500 in attorney's fees.

In support of her proposal, Khan presented testimony from herself, her attorney, and the parties' grown daughter, Mahim Ashraf.[4] Khan first testified as to her allegation that Ashraf was guilty of cruelty. She gave examples of malicious and controlling behavior by Ashraf throughout their marriage. For example, Khan testified that Ashraf once poured an entire gallon of milk over her head when she had just finished taking a shower. She stated that Ashraf did not permit their children to have any interactions with members of the opposite sex. In addition, Khan claimed that Ashraf was controlling with money, making her show him each load of laundry she needed to wash before he would give her coins for the laundry machines at the rental property where they once lived. Khan testified that Ashraf rarely permitted her to work outside the home, so she had only sporadic work experience as a substitute day care provider and at a department store.

Khan also described several instances of physical abuse by Ashraf, including "[a] couple of times" when he hit or pushed her. Khan also described an incident when Ashraf hit her with a remote control for refusing to turn on the television for him. Khan further contended that Ashraf physically abused their children, beginning when the oldest was just ten months old. Finally, she stated that Ashraf's 2008 arrest for family violence occurred after he pulled Khan's hair and pushed her into a wall, causing a reddish mark on her back.

---

[3] In April 2008, Ashraf was arrested for family violence. He was tried and convicted of family violence assault. *See* Tex. Penal Code Ann. § 22.01 (West 2011).

[4] Because the parties' daughter shares the appellant's last name, we will refer to her by her first name for clarity.

3

Additionally, Khan testified that Ashraf had allowed their home to fall into disrepair. She claimed that the house suffered minor water damage in 2001 or 2002, but because Ashraf never repaired it, water built up in the wall and eventually seeped into the living room and the furniture. Khan stated that her children were embarrassed by the state of the house and stopped having friends over to visit. According to Khan, her lack of access to the family finances prevented her from taking action to repair the house. She testified that Ashraf opened a home equity line of credit for $50,000 with Compass Bank, claiming he would use the money to make repairs. However, Ashraf did not permit Khan to sign the deposit form so that she could also withdraw from the line of credit. Khan testified that the home equity funds were not used to repair the home after all. Instead, according to Khan, Ashraf used the money to buy two Lexus automobiles.

The court admitted photos of the home into evidence. One photo depicted a rat inside the home. Khan testified that there were "a couple" of rats at one point, although they were gone by the time of trial. Khan also stated that there were cockroaches throughout the home and these were never exterminated because Ashraf believed it would be a waste of money. Khan testified that the photos had been taken between 2006 and 2008, but reflected the conditions she had been living in for the past ten years. She testified that the tax appraisal value of the home was approximately $121,000. However, Khan claimed, three real estate agents had appraised the home at closer to $105,000 due to its condition.

Khan testified as to her belief that Ashraf had committed adultery, stating that she "caught him cheating . . . over the phone" and "caught him in the driveway with a girl." Additionally, Khan testified with regard to her claim that Ashraf was guilty of fraud on the community. Khan

4

stated that Ashraf purchased the second Lexus with the home equity line of credit in violation of temporary orders entered by the trial court enjoining Ashraf from using that account. She further testified that Ashraf had begun drawing from a retirement account with the Employees Retirement System (ERS) despite temporary orders prohibiting either party from doing so.

Moreover, Khan testified that the empty lot did not belong to Ashraf's sister, as Ashraf claimed. She testified that Ashraf at one point leased the property to a construction company that was working on a nearby road for six months. Further, Khan claimed that even after she filed for divorce, Ashraf approached her about building a new home on the lot. She stated that she had seen drawings and plans Ashraf had created for the project. Khan further stated that she heard Ashraf tell a friend that the lot would pass to Ashraf's children when he died.

The parties' twenty-six-year-old daughter, Mahim, also testified in support of her mother's claims. Mahim testified that Ashraf had frequently beaten his children. She stated that Ashraf would pull the children up by the hair if he found them seated in his chair at the dining table. Mahim said Ashraf hit her on a regular basis, mostly slapping her on the face but also punching her or twisting her arms. Mahim also testified that, while her brother was standing up to use the toilet, her father would push open the bathroom door and tell him he needed to sit down to use the toilet. Ashraf would then stop his son in the middle of urinating and tell him to sit down. Mahim also testified that Ashraf had abused Khan throughout the children's lives. She recalled one incident when Ashraf threw a television remote at Khan's back and another, in April 2008, when Mahim called the police after Ashraf pulled Khan's hair and pushed her against the wall.

Mahim also corroborated that Ashraf restricted the family's access to money. "We never saw money or got money or received allowance or anything," Mahim testified. She stated that

her mother obtained money and food from family and community members, shopped at Goodwill, and used credit cards for basic household items. According to Mahim, Ashraf behaved as if it would be ludicrous for Khan to request his financial support. Mahim added that the family home was an unhealthy, unsanitary environment as a result.

Ashraf was the only witness to testify in favor of his proposal. He requested an even division of the parties' estate, proposing either that Khan receive the entire house and Ashraf receive all of his retirement income, or that the house be sold and the proceeds divided evenly while the retirement would also be divided evenly. Ashraf claimed that the empty lot should not be divided between the parties because it belonged to his sister. Finally, Ashraf requested either that he receive a better vehicle than the Honda Civic or that all of the vehicles be sold and the proceeds be split evenly between the parties.

In support of his case, Ashraf testified that he could not find work and described the fixed monthly income he received through Social Security and two retirement funds. Ashraf admitted that he began drawing from his ERS account during the divorce. However, Ashraf also claimed that he repaid Khan for the withdrawal by using the money for utilities, taxes, and mortgage payments on the family home. He also asserted that the withdrawal was permitted under temporary orders that the trial court had previously entered providing for the payment of property taxes during the pendency of the divorce.

Ashraf testified that he disciplined his children, but never abused them. He contended that he only struck Mahim one time, when he spanked her for beating her brother. Ashraf argued that the children had been brainwashed by Khan, who had always hated him, into believing he was a bad

6

person. Ashraf testified that he always provided for his family, funding the children's room and board in college and paying extra on the mortgage so that they could keep the home if he died.

Ashraf claimed that he did use funds from the home equity line of credit for some repairs, such as installing new tile in the bathrooms and entryway and enlarging the kitchen in the home. However, Ashraf admitted to taking money from that account to purchase vehicles. With respect to the empty lot at issue, Ashraf testified that he purchased it for his sister in Pakistan. Ashraf stressed that his sister had been responsible for paying taxes on the lot, except when he leased it to a construction company on her behalf and paid the taxes with the proceeds.

While cross-examining Ashraf, Khan's attorney offered evidence of Ashraf's alleged adultery. This included a Valentine's Day card from one woman, an affectionate e-mail from another, and documentation that Ashraf purchased a Southwest Airlines gift card for a female friend to travel to Austin. When asked if he remembered sending e-mails inviting a woman to have sex with him, Ashraf responded, "I don't remember." Later he asked, "Where is your proof that I slept with her? Just because I wrote that, sent that e-mail, does that mean I slept with her?" Ashraf admitted that he had "made mistakes" and "done something destructive" during the marriage, but only as a response to Khan being unfaithful many times.

After this testimony, as well as the testimony of the parties' attorneys concerning the fees they were owed, the court orally announced its decree. The court stated, "I can't totally go along with what [Khan] wishes this court to do," but expressed that "Mr. Ashraf may need a little bit of penalty for some of the complications he's caused." Thus, the court granted the divorce and:

a. Awarded the house to Khan, asserting that Ashraf "needs to get out";

7

b.      Ordered the empty lot to be sold and divided evenly, stating, "I have no evidence, other than the lot . . . belongs to the community";

c.      Awarded the Honda Civic, the Datsun, and the two Lexus vehicles in the same manner as the temporary orders and Khan's request;

d.      Ordered "the retirement" to be "split 50/50" on the grounds that "[s]he's entitled to it, and I know she's getting the house. But looking at these pictures, it might cost another $50,000 to get that house in tip-top shape, too. So I think that's about as fair as this Court's going to be"; and

e.      Ordered Ashraf to pay $3,000 in fees to Khan's attorney.

Khan subsequently filed a motion to enter judgment with a proposed final decree based on the trial court's oral pronouncement. On November 24, 2010, at the hearing on Khan's motion, the court entered a Final Decree of Divorce matching Khan's proposed decree.[5] On December 27, 2010, Ashraf filed a motion for new trial. The trial court denied Ashraf's motion, and Ashraf now appeals pro se.

In his pro se brief on appeal, Ashraf presents the following arguments: (1) that he received ineffective assistance of counsel that prejudiced the outcome in his case; (2) that the trial court abused its discretion in denying his motion for continuance; (3) that the final divorce decree was not approved by Ashraf's counsel and differed from the decree announced orally at the conclusion of the trial; and (4) that the trial court abused its discretion in making the division of property because the evidence was legally and factually insufficient to support the order.[6]

_____

[5] The decree bears the signatures of Khan and her attorney, but not Ashraf or his attorney. The record does not establish, but neither party appears to dispute, that Ashraf and his attorney did not attend the hearing.

[6] In his list of "Points for Review," Ashraf identifies only two issues: (1) that he received ineffective assistance of counsel and (2) that the trial court abused its discretion in making the property division. However, he introduces additional issues in the body and conclusion of his brief,

8

Khan responds that the doctrine of ineffective assistance of counsel is inapplicable in civil divorce cases; that Ashraf received notice of the final divorce decree and failed to preserve any complaint as to its contents; and that the trial court did not abuse its discretion in denying the continuance or making the property division. In one cross-point, Khan requests that we subject Ashraf to sanctions for filing a frivolous appeal. *See* Tex. R. App. P. 45.

## DISCUSSION

**Ineffective assistance of counsel**

Ashraf primarily complains that his trial counsel provided ineffective assistance. In support of this claim, Ashraf alleges that his counsel: (1) called him to testify despite Ashraf being very ill and under the influence of prescription medications, the side effects of which caused Ashraf to give incomprehensible testimony; (2) failed to object to the admission of outdated photographs of the family home and to offer evidence that Ashraf had made certain repairs; (3) failed to present other evidence, such as an inventory of community property and documents showing that Ashraf had paid more than required toward the mortgage each month; and (4) failed to respond when opposing counsel did not serve the proposed final divorce decree on Ashraf or his counsel.

The United States Supreme Court has recognized that ineffective assistance of counsel is a violation of the Sixth Amendment right to counsel. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). However,

---

and we will consider these as points of error on appeal. *See Giddens v. Brooks*, 92 S.W.3d 878, 880 (Tex. App.—Beaumont 2002, pet. denied) (pro se pleadings and briefs are to be liberally construed).

[i]t is well established that the doctrine of ineffective assistance of counsel does not extend to civil cases. The Sixth Amendment of the United States Constitution and Article I, Section 10 of the Texas Constitution provide that 'in all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense.' Thus, by their plain language neither the Sixth Amendment nor Article I, Section 10 apply to civil cases.

*Cherqui v. Westheimer St. Festival Corp.*, 116 S.W.3d 337, 343 (Tex. App.—Houston [14th Dist.] 2003, no pet.); *see also McCoy v. Texas Instruments, Inc.*, 183 S.W.3d 548, 553 (Tex. App.—Dallas 2006, no pet.). An exception to the general rule has been created with regard to trial counsel in parental termination cases. *See In re M.S.*, 115 S.W.3d 534, 544 (Tex. 2003). However, the case before us does not concern parental rights. Accordingly, the doctrine of ineffective assistance is inapplicable, and we overrule this issue on appeal.

**Motion for continuance**

We next consider Ashraf's complaint regarding the trial court's denial of his motion for continuance. We review the grant or denial of a motion for continuance for an abuse of discretion. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002) (citing *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986)); *Rocha v. Faltys*, 69 S.W.3d 315, 318–19 (Tex. App.—Austin 2002, no pet.). This Court cannot overrule the trial court's decision unless the trial court acted unreasonably or in an arbitrary manner, "without reference to any guiding rules and principles." *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991) (quoting *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)).

According to Ashraf, the trial court "abused its discretion by denying [his] Motion for Continuance which was supported by a doctor's statement of medical impairment and the effects

10

of eight prescription drugs on [Ashraf]." The doctor's letter was not made part of the record in this case. However, in support of this argument, Ashraf asserts that portions of his testimony at trial were incoherent, "full of incomplete sentences," and indicative of confusion and agitation on his part. He also notes that Khan's attorney commented on Ashraf's "recalcitrant nature, the fact that he wants to argue with me and spar with me" in his closing argument to the court.[7]

However, this evidence is insufficient to demonstrate that the trial court abused its discretion in denying the continuance. In exercising its discretion, the trial court could have taken into account the entire procedural history of this case. *See Waste Water, Inc. v. Alpha Finishing & Developing Corp.*, 874 S.W.2d 940, 942 (Tex. App.—Houston [14th Dist.] 1994, no writ). Thus, when presented with Ashraf's motion, the trial court could have considered not only the statement by Ashraf's doctor but also the long duration of the case up until that point, including multiple continuances and failed attempts at alternative dispute resolution. The court could also have considered the suggestion by Khan's attorney that Ashraf was only attempting to stall again and the fact that a witness had flown in to testify. Further, as the trial court observed when presented with the doctor's statement, it was merely a request and did not state that Ashraf was unable to participate.

As a result, we cannot conclude that the court acted unreasonably or in an arbitrary manner, "without reference to any guiding rules and principles," in denying Ashraf's motion for continuance. *See Beaumont Bank, N.A.*, 806 S.W.2d at 226. We overrule this issue on appeal.

---

[7] Ashraf has attached various documents to his brief, including several pages describing the side effects of medications. However, these are not a part of the appellate record, and we do not consider them. *See Adams v. Reynolds Tile & Flooring, Inc.*, 120 S.W.3d 417, 423 (Tex. App.—Houston [14th Dist.] 2003, no pet.) ("[T]he attachment of documents as exhibits or appendices to briefs does not constitute formal inclusion in the record on appeal and, therefore, [such documents] cannot be considered.").

**Final decree of divorce**

Ashraf also argues that the trial court "abused its discretion in signing a written decree that was not approved by counsel and contains orders dividing property that was not divided by the Trial Judge." According to Ashraf, he and his attorney "were not provided a copy or asked to sign the Final Decree of Divorce" and thus were "denied the right to review [it] for correctness."

In response to this issue, Khan directs us to her motion to enter judgment contained in the clerk's record. The motion states that Khan's proposed decree was submitted to Ashraf's attorney on two occasions. The motion also includes a copy of the proposed decree, notice of the hearing set for November 24, 2010, and a certificate of service averring that the motion was served on Ashraf's attorney by facsimile transmission on November 19, 2010. Khan asserts that, "[a]fter being given an opportunity to present evidence and object to the proposed order, Mr. Ashraf cannot complain for the first time on appeal." *See* Tex. R. App. P. 33.1.

We agree. To preserve a complaint for appellate review, a party must make the complaint to the trial court by timely request, objection, or motion, state the specific grounds therefore, and obtain a ruling. *Id.* The record does not demonstrate that Ashraf attended the hearing on the entry of the decree or made any request, objection, or motion with regard to its contents. By failing to take these measures after receiving notice, Ashraf did not preserve any issue for our review. *See Ricks v. Ricks*, 169 S.W.3d 523, 528 (Tex. App.—Dallas 2005, no pet.); *see also Wright v. Wright*, No. 03-08-00485-CV, 2009 Tex. App. LEXIS 8563, at *2 (Tex. App.—Austin Nov. 3, 2009, no pet.) (mem. op.); *Rebelloso v. Rebelloso*, No. 03-96-00614-CV, 1997 Tex. App. LEXIS 3468, at

*8 (Tex. App.—Austin July 3, 1997, no pet.) (mem. op., not designated for publication).[8] We therefore do not need to evaluate Ashraf's claim that the final decree diverged from what was orally announced at trial. *See* Tex. R. App. P. 44.1. We overrule this issue on appeal.

**Division of property**

Finally, Ashraf complains about the division of property in the trial court's final divorce decree. Specifically, he argues that the trial court "abused its discretion in making the property division and . . . in giving non-community property to [Khan] and community property to [the parties' son], with no facts to support it."

"In a decree of divorce or annulment, the court shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." Tex. Fam. Code Ann. § 7.001 (West 2006). The factors to be considered in the trial court's division of the estate include: (1) fault in breaking up the marriage; (2) the spouses' capacities and abilities; (3) business opportunities; (4) education; (5) relative physical conditions; (6) relative financial conditions and obligations; (7) disparity of ages; (8) sizes of separate estates; (9) the nature of the property; and (10) disparity in earning capacities or incomes. *See Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981).

---

[8] To the extent that Ashraf may mean to argue that he could not preserve error because he never received notice, we note that a certificate of service is prima facie evidence that notice was sent, and notice properly sent under rule 21a raises a presumption that notice was received. *See* Tex. R. Civ. P. 21a; *Mathis v. Lockwood*, 166 S.W.3d 743, 745 (Tex. 2005). In the present case, Khan's motion to enter judgment demonstrates that notice of the proposed decree and hearing was properly sent to Ashraf's attorney. Nothing in rule 21a precludes a party from offering proof that notice was not received. Tex. R. Civ. P. 21a. However, Ashraf offers only unsupported statements suggesting that he did not receive notice. Accordingly, we must presume that Ashraf received notice and nevertheless did not complain of the decree's contents.

The trial court has broad discretion in dividing the marital estate at divorce. *See id.* at 699. On appeal, we presume that the trial court exercised this discretion properly and will reverse the cause only where there is a clear abuse of discretion. *See Bell v. Bell*, 513 S.W.2d 20, 22 (Tex. 1974). A clear abuse of discretion is shown only if the division of the property is manifestly unjust. *See Mann v. Mann*, 607 S.W.2d 243, 245 (Tex. 1980). "The party attacking the property division bears the heavy burden of showing that the trial court's property division was not just and right." *Pletcher v. Goetz*, 9 S.W.3d 442, 446 (Tex. App.—Fort Worth 1999, pet. denied).

Khan responds to Ashraf's argument by stressing that the trial court received evidence that Ashraf was at fault in breaking up the marriage through his controlling, abusive, and neglectful conduct and that he had greater business opportunities, education, and earning capacity than Khan. She concludes that the disproportionate division of the estate was therefore amply supported. We agree that Ashaf has not met "the heavy burden of showing that the trial court's property division was not just and right." *Pletcher*, 9 S.W.3d at 446.

For example, Ashraf complains of the trial court's award of the entire family home to Khan. However, the court heard evidence that the home was worth between $105,000 and $121,000; that it was subject to a home equity line of credit with which at least two vehicles had been purchased; and that it required considerable repairs, which were the original justification for the line of credit of $50,000.[9] Accordingly, the house represented a mixture of financial assets and

---

[9] After examining the photos admitted into evidence, the trial court opined that "it might cost another $50,000 to get that house in tip-top shape." Ashraf claims this statement is an abuse of discretion in itself, since even experts cannot conclusively discern repair costs from a few pictures. However, we understand the comment to refer to the evidence that a $50,000 home equity line of credit was obtained for the purpose of repairing the home. Given the additional testimony that few

14

liabilities. The court also heard evidence that Ashraf had abused Khan and their children throughout the marriage, failed to maintain their home, and prohibited basic sanitary measures like pest extermination, contributing significantly to the breakup of the marriage. Consequently, we cannot conclude that the trial court was manifestly unjust to award the house to Khan.

Ashraf also claims that it was manifestly unjust to award Khan the entirety of her 401(k) account while dividing his retirement accounts equally between the parties. At trial, the parties stipulated that Ashraf's various retirement accounts offered him approximately $1,580 in income each month. Meanwhile, the court heard evidence that Khan's only retirement account was a 401(k) worth approximately $6,000 in total and that Khan, unlike Ashraf, was not yet eligible for Social Security income. In addition, the court heard that Khan possessed a degree in home economics from Pakistan and had scant work history while Ashraf possessed an architecture degree from the United States and had worked in architecture for decades. For these reasons, in addition to the evidence of abuse discussed above, we cannot agree with Ashraf. The division of the retirement accounts was not manifestly unjust and therefore not a clear abuse of discretion on the part of the trial court. *See Bell*, 513 S.W.2d at 22; *Mann*, 607 S.W.2d at 245.

Ashraf also claims that insufficient evidence supported the trial court's award of two vehicles, the second Lexus and a 1974 Datsun, to the parties' son while Ashraf received only the 1998 Honda Civic. However, Khan testified that her son had purchased the Datsun with his own money and that Ashraf explicitly said he was buying the second Lexus for their son. Additionally,

---

if any repairs were actually made, it was not manifestly unjust for the trial court to state that the remaining repairs might require the same amount of money originally earmarked for that purpose.

the trial court heard that Ashraf purchased at least one of the vehicles using the home equity line of credit in violation of a court order. Consequently, in distributing the vehicles and stating, "That seems to be what the parties intended at the time, for [their son] to drive the Lexus," the trial court did not abuse its discretion.[10]

Finally, Ashraf argues that the court abused its discretion in distributing the proceeds from the empty lot between the parties. Ashraf testified at trial that he purchased the lot for his sister and that she had largely been responsible for paying property taxes on it, for which reason the lot was not community property. However, the court was presented with evidence contradicting that proposition. There was evidence that the lot was purchased in Ashraf's name, but that another man had been listed as the owner with Travis County. That man, whom Ashraf described as a friend in Houston, submitted an affidavit disclaiming ownership of the lot and averring that it belonged to Ashraf, which suggested there was some subterfuge by Ashraf with regard to the lot. Moreover, Khan testified as to various specific circumstances, such as Ashraf planning to build on the lot and telling a friend that the lot would pass to his children upon his death, indicating that it did not belong to Ashraf's sister.

Under the family code, all property possessed by either spouse during or on the dissolution of a marriage is presumed to be community property. Tex. Fam. Code Ann. § 3.003(a) (West 2006); *Harrison v. Harrison*, 321 S.W.3d 899, 902 (Tex. App.—Houston [14th Dist.] 2010, no pet.). To overcome this presumption, a spouse who claims that an asset is separate property

---

[10] The Lexus and Datsun vehicles were awarded to Khan with the understanding that she would give them to the parties' son.

16

must establish that fact by clear and convincing evidence and must trace and clearly identify the property claimed. Tex. Fam. Code Ann. § 3.003(b) (West 2006). In addition, as the finder of fact, the trial court is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Iliff v. Iliff*, 339 S.W.3d 74, 83 (Tex. 2011). Here, given the significant evidence supporting Khan's characterization of the lot, the trial court could have found that Ashraf did not provide clear and convincing evidence to rebut the presumption that the lot was community property. Thus, it was not manifestly unjust to award half of the lot's value to Khan.[11]

For the above reasons, Ashraf has failed to demonstrate that the trial court's division of property was not just and right. *Pletcher*, 9 S.W.3d at 446. We hold that the property division was not manifestly unjust and therefore not a clear abuse of discretion. *See Bell*, 513 S.W.2d at 22; *Mann*, 607 S.W.2d at 245. We overrule this issue on appeal.

**Damages for frivolous appeal**

In a cross-point on appeal, Khan requests that this Court find Ashraf's appeal to be frivolous and award damages in the amount of $5,000. *See* Tex. R. App. P. 45 (permitting an appellate court to award a prevailing party "just damages" for "frivolous" appeals).

In determining whether an appeal is frivolous, we apply an objective test, reviewing the record from the viewpoint of the advocate and deciding whether the advocate had reasonable

---

[11] Ashraf also argues that the trial court abused its discretion in refusing to hear evidence of an inheritance received by Khan. However, the record shows that Khan was questioned only as to any inheritance she might receive in the future, and the trial court sustained an objection due to relevance. Further, to complain on appeal that a trial court erroneously excluded evidence, the substance of the evidence must be made known to the trial court by an offer of proof. Tex. R. Evid. 103(a)(2); Tex. R. App. P. 33.1. Having failed to make such an offer, Ashraf has not preserved this complaint for appeal.

grounds to believe the judgment could be reversed. *Smith v. Brown*, 51 S.W.3d 376, 380 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). Whether to grant sanctions for a frivolous appeal is a matter of discretion that an appellate court exercises with prudence and caution and only after careful deliberation in truly egregious circumstances. *Goss v. Houston Cmty. Newspapers*, 252 S.W.3d 652, 657 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

Although we have noted various deficiencies in Ashraf's appeal, and although we have rejected his arguments, Khan has not demonstrated that Ashraf's appeal is among the "truly egregious circumstances" for which we would award damages. *See id.* We therefore exercise our discretion to deny Khan's request for sanctions and overrule her cross-point on appeal.

## CONCLUSION

We affirm the final decree of divorce.[12]

_____

Diane M. Henson, Justice

Before Justices Puryear, Henson, and Goodwin

Affirmed

Filed: May 24, 2012

---

[12] Khan filed a motion, which is pending before this Court, to accelerate this appeal or to provide for enforcement of the trial court's final decree. We dismiss the motion as moot.

18