**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-23-00312-CV**
_____

**NOE BARRAGAN, Appellant**

**V.**

**CELENE BARRAGAN, Appellee**

On Appeal from the 279th District Court
Jefferson County, Texas
Trial Cause No. F-239,596

**MEMORANDUM OPINION**

In two issues, Noe Barragan challenges the trial court's determination that the conveyance of certain real property was valid and the characterization of certain real property as Celene Barragan's separate property. We hold the trial court: (1) did not abuse its discretion in determining the conveyance of real property was valid; and (2) did not abuse its discretion by characterizing certain real property as Celene's

1

separate property. For the reasons discussed below, we affirm the trial court's judgment.

## Background[1]

In June 2021, Celene Barragan filed for divorce from her husband of fourteen years, Noe Barragan. The couple, married in April 2007, had two minor children; however, the children are not at issue nor discussed in this appeal. Noe timely filed his Original Answer, and in a separate filing, an Original Counterpetition for Divorce.

In March 2022, Celene filed Petitioner's First Amended Petition for Divorce. In the Amended Petition, Celene included two properties, a home located at 5227 Lewis Drive, Port Arthur, Texas, ("Lewis Drive") and 3.85 acres of land in the Port Acres area of Port Arthur, Texas ("Port Acres") as separate properties that are not part of the community estate. Attached exhibits included: a Special Gift Warranty Deed dated December 20, 2007, wherein Salvador and Margarita Barragan gifted the Lewis Drive property to Noe Barragan; a General Warranty Deed dated January 2019 wherein Glen Kilma conveyed the Port Acres property to Noe Barragan; a General Warranty Deed dated April 24, 2020, wherein Noe Barragan conveyed the

---

[1]We limit our discussion of background facts to those necessary to the appeal's resolution. *See* Tex. R. App. P. 47.1 (requiring an appellate court to hand down an opinion as brief as practicable but that addresses every issue raised and necessary to the appeal's resolution).

Lewis Drive property to Celene Barragan; a General Warranty Deed dated April 24, 2020, wherein Noe Barragan conveyed the Port Acres property to Celene Barragan; Celene's Initial Disclosures that listed the Lewis Drive and Port Acres properties as her separate property; and Noe's Response to Request for Production and Inspection wherein Noe did not list the Lewis Drive or Port Acres properties as real estate that he presently owned, separate property, or properties that he has a claim against.

That same month, Celene filed Petitioner's Traditional Motion for Partial Summary Judgment. In the Motion, Celene asked the trial court to enter an order holding that the Lewis Drive and Port Acres properties are her separate properties. According to Celene, Noe received the Lewis Drive property as a gift from his parents, via Special Gift Warranty Deed, making it Noe's separate property. Noe then executed a General Warranty Deed thirteen years later that conveyed Lewis Drive to Celene as her separate property by gift.

Celene further stated that Noe purchased the Port Acres property in 2019, during their marriage. In 2020, Noe executed a General Warranty Deed that conveyed the Port Acres property to Celene. According to Celene, as a result of this conveyance, Noe conveyed his undivided one-half community interest in the Port Acres property to her, and this created a presumption that she received the property as a separate property by gift.

In May 2022, Noe filed his Response to Petitioner's Motion for Summary Judgment. According to Noe, the deeds Celene provided do not evidence the existence of gifts of property because Noe lacked the donative intent required. Noe argued that it was his intent to add Celene to the deeds with him, not to remove him completely because he never intended the transfer of the property to be a gift to Celene. He further argued that language of the deeds does not contain the gift deed language present in the Special Gift Warranty Deed wherein his parents gifted Lewis Drive to him. Additionally, Noe claimed that Celene has attempted to defraud him and the community estate because both deeds contain language that consideration was paid and no such consideration was exchanged between the parties.

A hearing on the division of property was held in June 2023. At the hearing, Celene testified the Lewis Drive property was sold to her and Noe by Noe's father for $37,000 in $500 monthly payments. Despite the Special Gift Warranty Deed's indicating that Lewis Drive was a gift to Noe, Celene testified that they signed a promissory note to repay Noe's father. Celene testified that the Port Acres property was purchased in 2019, and both properties were conveyed to her in two separate general warranty deeds. All the relevant deeds were admitted as exhibits. Celene indicated that Maria Becerra prepared the deed for Lewis Drive. According to Celene, in April 2020 she discovered that her husband was being unfaithful, and the conveyance of the properties was Noe's way of showing her that he had nothing to

4

do with the women that she confronted him about. Celene testified that she and Noe went to the notary's office to execute the deeds, and they were instructed to read over the deeds and sign them. Once she received copies of the recorded deeds, she placed them with all other important documents that were accessible to both her and Noe. Celene acknowledged that since the 2020 conveyance, the annual tax bills and receipts for payments came to the Lewis Drive property and were in her name only. Celene testified that the 2020 tax payment was paid from their joint account, but the 2021 and 2022 tax payments were made from her personal account since she and Noe were separated, and she no longer had access to his account.

On cross-examination, Celene stated that she began working outside the home in May 2022, and that prior to that time, she used spousal support and child support for food and to pay the 2021 property taxes. Celene admitted that she does not have a mortgage nor a car payment, and she does not pay car insurance. Celene testified that she previously provided evidence that her monthly bills were less than $2,200, and that she earns approximately $1,300 a month, and receives $2,380 in monthly child support.

Celene indicated that she contacted Maria Becerra to let her know that she wanted to change the ownership on two property titles. The change was not because she thought Noe would divorce her and keep the properties, but because Noe wanted

5

to give the properties to her. Celene stated that she was embarrassed to tell Becerra that Noe was gifting her the properties due to his infidelity.

On re-direct, Celene testified that any extra money that she has goes towards household and medical expenses. Other expenses include religious, holiday, and birthday celebrations. Celene stated that she and Noe tried to save their marriage. According to Celene, there were times that Noe was gone from the family for work to make more money, and Noe kept receiving promotions at work. Celene stated that she understood that if she were awarded the home at Lewis Drive, Noe wanted the land in Port Acres. That said, Celene did not understand why he now wants Port Acres after he gave it to her, and they initially mutually agreed on the division of property in the divorce. Celene stated that she is not giving him the Port Acres property, because he is keeping property in Mexico and stocks from a rent house.

Next, Noe Barragan testified. Noe identified a woman that he dated and stated that they have probably dated for more than one year, though they do not go out often. He testified that he never admitted to any infidelity with the woman, only that they talked.

Noe testified he immigrated to the United States in 1996 at the age of eleven. He also said he worked as a piping planner for Specialty Welding and Turnaround and that his job entails his receiving and reviewing documents in English. According to Noe, he did not read the deeds before he signed them because he trusted that the

notary prepared the documents properly. Noe stated that he saw where they were both going to sign, but he did not know that his name would be removed and only Celene's name would remain. He requested a copy of the deeds, but claimed he never received them.

According to Noe, Celene never requested that she solely own Lewis Drive or the Port Acres property, and he never intended for her to. He recalled that they discussed including her on the titles, and he agreed that he would not give both away because it is pretty much all that they own. He insisted that he did not intend to gift the properties to Celene and that the deeds do not mention the properties would be Celene's sole and separate properties. Celene picked and instructed the person to prepare the deeds. According to Noe, he believed that the deeds were prepared to include Celene, and he was never informed that the prepared deeds removed his name. Noe asked the trial court to award him the Lewis Drive and Port Acres properties, or alternatively, to order that the Port Acres property be sold and split. Noe stated he intended that they both be on the deeds to the properties, and he believed they both have some rights to both properties. When they separated, Noe believed that Celene would keep Lewis Drive, and he would keep everything else.

At the conclusion of Noe's testimony, the trial judge also questioned him. The trial judge asked Noe why he signed the deeds giving Celene ownership of Lewis

Drive, and Noe could not clearly respond but stated that he believed that he was adding Celene's name to the document, and he "trusted her."

The trial judge then questioned Celene as to why Noe signed the deed giving her Lewis Drive, and Celene stated that Noe was caught being unfaithful, and he suggested the change so that she would not think he was unfaithful. According to Celene, Noe wanted to give her everything, and he saw that the documents at the notary only had her name on it. Even after they signed the deeds, Celene continued to write the checks from their joint account to pay bills for the house.

The next day, the trial court delivered its ruling. The trial court awarded Lewis Drive to Celene as her separate property and awarded the Port Acres property to Celene as community property at a $45,000 value. On October 2, 2023, the trial court issued Findings of Fact and Conclusions of Law.

Noe timely appealed and challenges the award of the Lewis Drive and Port Acres properties to Celene. Noe argues the trial court abused its discretion when it determined that the transfer of ownership of the properties was a valid conveyance and when it determined that the Lewis Drive property was the sole and separate property of Celene.

**Standard of Review**

A trial court is charged with dividing the community estate in a "just and right[]" manner considering the rights of both parties. Tex. Fam. Code Ann. § 7.001.

8

When a party complains of the trial court's division of property, the complainant must demonstrate from the evidence in the record that the division was so unjust that the trial court abused its discretion. *Pletcher v. Goetz*, 9 S.W.3d 442, 446 (Tex. App.—Fort Worth 1999, pet. denied). Under this standard, legal and factual sufficiency are relevant factors in assessing whether the trial court abused its discretion. *See Beaumont Bank v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991) (explaining same in the context of a turnover order). We presume the trial court exercised its discretion properly if there is any reasonable basis for doing so. *See Pletcher*, 9 S.W.3d at 446. When findings of fact and conclusions of law are entered, we review the trial court's findings of fact for sufficiency of the evidence, and the trial court's conclusions of law de novo. *See Hegar v. AM. Multi-Cinema, Inc.*, 605 S.W.3d 35, 40 (Tex. 2020); *In re A.E.*, No. 09-16-00019-CV, 2017 WL 1535101, at *5 (Tex. App.—Beaumont Apr. 27, 2017, pet. denied) (mem. op.) (citation omitted) (discussing same in context of standing). We will not disturb the trial court's division unless the record demonstrates "that the division was clearly the result of an abuse of discretion." *Pletcher*, 9 S.W.3d at 446 (citation omitted). We will not reverse unless the record clearly shows that the trial court acted arbitrarily or unreasonably. *See id.; see also Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). "An abuse of discretion does not occur where the trial court bases its decisions on conflicting evidence and some evidence supports its decision." *Oliver*

9

*v. Oliver*, No. 9-18-00208-CV, 2020 WL 1173704, at \*5 (Tex. App.—Beaumont Mar. 12, 2020, no pet.) (mem. op.) (citing *In re Barber*, 982 S.W.2d 364, 366 (Tex. 1998) (orig. proceeding)).

## Analysis

In his first issue, Noe argues that the trial court mischaracterized the attempted transfer of the Lewis Drive property as a valid conveyance. According to Noe, the evidence at trial established that as native Spanish-speakers, neither Noe or Celene had functional reading comprehension of English language documents nor the legal concepts of the deeds. Noe contends that this led to a mutual mistake because the properties were to be converted into the community property of Noe and Celene. Noe further argues that neither of the 2020 deeds were ever delivered to him as required for a valid conveyance.

"Pursuant to the doctrine of mutual mistake, when parties to an agreement have contracted under a misconception or ignorance of a material fact, the agreement will be avoided." *Williams v. Glash,* 789 S.W.2d 261, 264 (Tex. 1990). "The question of mutual mistake is determined not by self-serving subjective statements of the parties' intent, which would necessitate trial to a jury in all such cases, but rather solely by objective circumstances surrounding execution of the [contract]." *Id.* "Courts have awarded rescission to avoid unjust enrichment based

10

on mistake." *Myrad Properties, Inc. v. LaSalle Bank Nat. Ass'n*, 300 S.W.3d 746, 751 (Tex. 2009).

A mutual mistake is generally established from all the facts and circumstances surrounding the parties and the execution of the instrument. *Henderson v. Henderson*, 694 S.W.2d 31, 34 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e.). To prove a mutual mistake, the evidence must show that both parties were acting under the same misunderstanding of the same material fact. *Walden v. Affiliated Computer Servs., Inc.*, 97 S.W.3d 303, 326 (Tex. App.—Houston [14th Dist.] 2003, pet. denied); *see also City of the Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 735 (Tex. App.—Fort Worth 2008, pet. dism'd). "A mistake by only one party to an agreement, not known to or induced by acts of the other party[,] will not constitute grounds for relief." *Johnson v. Snell*, 504 S.W.2d 397, 399 (Tex. 1974) (citations omitted). A unilateral mistake does not provide grounds for relief even though it results in inequity to one party. *Holley v. Grigg*, 65 S.W.3d 289, 295 (Tex. App.—Eastland 2001, no pet.).

In this case, the evidence at trial does not indicate a mutual mistake occurred. In her testimony, Celene indicated that Noe desired to gift her the Lewis Drive and Port Acres properties to show that he was a faithful husband and that the plan was not to add her name to the deeds, but for a name change so the properties could be given to her. Noe's testimony, on the other hand, indicated that he did not know that

11

the deeds would remove his name and only name Celene as the property owner, but he also acknowledged that he did not pay attention and read the deeds before signing. Noe further testified that he did not request to review the deeds or speak with a lawyer about them either.

This evidence does not support Noe's argument that the evidence establishes the existence of a mutual mistake. *See Walden*, 97 S.W.3d at 326. The evidence establishes the mistake, if any, was unilateral on Noe's part where he failed to review the deeds and assumed that the deeds merely added Celene's name and did not remove his. As established in *Holley*, a unilateral mistake is not a ground for relief. *See Holley*, 65 S.W.3d at 295.

Next, Noe argues that the deeds were never delivered to him, and this negated a proper conveyance of the properties. Conveyance by deed requires delivery of the deed. *See* Tex. Prop. Code Ann. § 5.021. "Delivery of a deed has two elements: (1) the grantor must place the deed within the control of the grantee (2) with the intention that the instrument become operative as a conveyance." *Noell v. Crow-Billingsley Air Park Ltd. P'ship*, 233 S.W.3d 408, 415 (Tex. App.—Dallas 2007, pet. denied) (citations omitted). However, manual delivery of the deed is not required. *Id.* (citations omitted). The test is not physical possession, but whether the grantor gave the grantee control of the deed. *Id.* at 416.

12

Here, the evidence established by way of Celene's testimony that after executing the deeds, the notary gave them a copy of the deeds in a manila folder and that the documents had to be mailed for recording because offices were closed. Celene further testified that the deeds were returned to her by mail, and that she placed them where she keeps all other important documents. In this case, Celene was the grantee, and she demonstrated that she exercised control over the deeds by placing them with her important documents. The Property Code requires a conveyance to be "delivered *by* the conveyor[.]" Tex. Prop. Code Ann. § 5.021 (emphasis added). We do not see any circumstances where the deed, to be effective, was required to be delivered to Noe, the grantor.

Having considered both of Noe's arguments, we hold the trial court did not abuse its discretion by determining the conveyances of real property were valid. We overrule Noe's first issue.

In his second issue, Noe contends that the trial court abused its discretion when it characterized the Lewis Drive property as the sole and separate property of Celene. According to Noe, Celene failed to meet her burden of proof to demonstrate that Lewis Drive is her separate property by clear and convincing evidence and that Celene failed to establish that the existence of a gift since the deed fails to include the requisite donative intent and separate property recitals. Noe argues that Lewis

13

Drive should remain his separate property, or at the very least, community property of the spouses.

The Texas Family Code defines community property as "property, other than separate property, acquired by either spouse during marriage." Tex. Fam. Code Ann. § 3.002. Separate property consists of property owned or claimed by the spouse before marriage, the property acquired by the spouse during marriage by gift, devise, or descent, and the recovery for personal injuries sustained by the spouse during marriage, except any recovery for loss of earning capacity during marriage. *Id*. § 3.001. Property possessed by either spouse during the dissolution of marriage is presumed to be community property absent proof by clear and convincing evidence that the property is separate. *Id*. § 3.003. The burden is placed on the spouse seeking to establish that certain property is separate property. *Pearson v. Fillingim*, 332 S.W.3d 361, 364 (Tex. 2011) (per curiam).

Generally, a gift is "a voluntary transfer of property to another made gratuitously and without consideration." *In re Marriage of Moncey*, 404 S.W.3d 701, 710 (Tex. App.—Texarkana 2013, no pet.) (citing *Magness v. Magness*, 241 S.W.3d 910, 912 (Tex. App.—Dallas 2007, pet. denied)) (other citations omitted). To establish the existence of a gift, the person claiming the existence of a gift must demonstrate the intent to make a gift, delivery of the property, and acceptance of the property. *Magness*, 241 S.W.3d at 912. "A deed for property from one spouse as

14

grantor to the other spouse as grantee creates a presumption the grantee spouse received the property as separate property by gift." *Id.* (citing *Raymond v. Raymond*, 190 S.W.3d 77, 81 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *Roberts v. Roberts*, 999 S.W.2d 424, 432 (Tex. App.—El Paso 1999, no pet.)). This presumption is rebutted by evidence the deed was procured by fraud, accident, or mistake. *Id.* at 912–13; *Raymond*, 190 S.W.3d at 81; *Roberts*, 999 S.W.2d at 431.

To establish that the Lewis Drive property was a gift, Celene presented a 2020 General Warranty Deed executed by Noe that granted Celene the property. Celene further testified that it was Noe's desire to gift Celene the Lewis Drive and Port Acres properties to show that he was a faithful husband, and that the plan was not to add her name to the deeds, but for a name change so that the properties could be given to her. She testified that she and Noe went to the notary to execute the deed, and the deed was delivered to Celene at the residence after recording.

To rebut Celene's testimony, Noe testified that he did not intend to gift the Lewis Drive property to Celene as her separate property, but that he only intended to add her name to the deed. However, Noe admitted to executing the deed without reading it or consulting an attorney regarding the language of the deed.

"As factfinder, the trial court alone determines the credibility of the evidence and the witnesses, the weight to give their testimony, and whether to accept or reject all or any part of that testimony." *Eckhardt v. Eckhardt*, 695 S.W.3d 883, 892 (Tex.

15

App.—Houston [1st Dist.] 2024, no pet.) (citations omitted). The trial court was free to disbelieve any or all of Noe's testimony. *Cardwell v. Cardwell*, 195 S.W.3d 856, 859 (Tex. App.—Dallas 2006, no pet.). Although there was conflicting evidence, the trial court could have reasonably concluded that Noe failed to effectively rebut the gift presumption by establishing fraud, accident, or mistake in the execution of the deed.

We hold the trial court did not abuse its discretion by characterizing the Lewis Drive property as Celene's separate property. We overrule issue two.

## Conclusion

Having overruled both of Noe's issues, we affirm the trial court's judgment. AFFIRMED.

W. SCOTT GOLEMON
Chief Justice

Submitted on June 9, 2025
Opinion Delivered October 23, 2025

Before Golemon, C.J., Johnson and Chambers, JJ.